# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
April 22, 2016 Session, Heard at Nashville

**STATE OF TENNESSEE v. GLEN HOWARD**

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Hamilton County
No. 275593   Barry A. Steelman, Criminal Court Judge**

_____

**No. E2014-01510-SC-R11-CD – Filed October 12, 2016**

_____

We granted this appeal to consider whether our decision in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), wherein we set forth the test for determining whether a criminal offense constitutes a lesser-included offense of a charged offense, remains viable following the 2009 amendments to Tennessee Code Annotated section 40-18-110, which codified *Burns* parts (a) and (c) but excluded part (b).  Having determined that the statute did not abrogate part (b) of the *Burns* test, we reverse the Court of Criminal Appeals' conclusion that aggravated sexual battery is not a lesser-included offense of rape of a child because the legislature did not include it in the 2009 amendments to the statute.  Upon further consideration, we hold that aggravated sexual battery is, in fact, a lesser-included offense of rape of a child.  Lesser-included offenses are to be determined by referring to the express provisions of the statute, and if not specifically mentioned therein, by further applying the guidance of *Burns* part (b).  We also conclude, based on the proof in the record on appeal, that defendant's conviction for aggravated sexual battery as a lesser-included offense of rape of a child was supported by the evidence and should be reinstated.  Accordingly, the judgment of the Court of Criminal Appeals vacating this conviction is reversed and his conviction stands.  The remaining issues decided by the Court of Criminal Appeals are affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed in Part; Affirmed in Part**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee (on appeal); Raymond T. Faller, District Public Defender; and Mary Ann Green and Ted Engel, Assistant District Public Defenders (at trial), for the defendant, Glen Howard.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; John H. Bledsoe, Senior Counsel (on appeal); William H. Cox, District Attorney General; and Charles D. Minor and Amanda Morrison, Assistant District Attorneys General (at trial), for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

Glen Howard ("defendant") was indicted for five counts of rape of a child and one count of aggravated sexual battery involving two victims that occurred between the dates of November 1, 2008, and December 31, 2009. J.B. is the mother of the victims in this case, then-nine-year-old N.J.[1] and then-seven-year-old M.J.

J.B. and defendant became acquainted with each other as regular patrons of a local bar called Rob's. They began dating, and around October 2007, defendant invited J.B. and the victims to move in with him. Defendant performed maintenance services for the apartment complex in which they resided, and the management provided him with an apartment and small salary in exchange for his services. The victims shared one bedroom that was furnished with bunkbeds, while defendant and J.B. shared the other bedroom. J.B., defendant, and the victims resided in the apartment together for approximately two years. J.B. worked at Gold Bond, Inc., during this time. In March or April 2008, she was moved from first shift to third shift. Defendant's sexual abuse of the victims began "a couple of weeks" after J.B.'s change in her work schedule. On December 14, 2009, N.J. and M.J. disclosed to J.B. allegations that defendant had been touching them inappropriately.

Count One of the presentment (rape of a child) charged defendant with vaginal penetration of N.J., a child more than three (3) years of age but less than thirteen (13) years of age. N.J. recalled defendant awakening her and instructing her to go to his room. The lights were off, but the computer was on. Defendant instructed N.J. to undress and lie down on the bed. He touched the outside of her vagina with his finger. He then tried to penetrate her vaginally with his penis. When he attempted this, N.J. said, "It hurt on the inside." It "felt very bad, like it was not good." N.J. asked defendant to stop when it began to hurt, and he did. He arose and donned his robe. She dressed in her nightgown and left the room. She closed the door as she left, as defendant directed her to do. She thought he retrieved the towel because he was "going to do that . . . . Because he did it every time that he touched [her], like, after he did it, every time." N.J. reentered the room because she forgot her socks. She saw defendant standing beside the computer, and

---
[1] It is the policy of this Court to identify minor victims of sexual offenses by initials to protect their privacy. In furtherance of this policy, we also identify the victims' mother by her initials.

she saw "some lady, she was undressed" on the computer. Defendant was rubbing his penis. She then saw him "use the towel." She recalled, "[H]e was doing that with the stuff and - the white stuff, yeah." She went back to bed quietly.

Count Two of the presentment (rape of a child) charged defendant with oral penetration of N.J. N.J. recalled another incident that occurred when J.B. was at work and defendant directed her to put his penis into her mouth. She entered his room wearing pajamas, and he instructed her to undress. Still wearing her underwear, N.J. sat on the edge of the bed. Defendant stood in front of her, facing her, and inserted his penis into her mouth. He "moved back and forth." N.J. said that it was "nasty" and that "[i]t didn't taste good." She did not see defendant ejaculate. When defendant was finished, she donned her pajamas and left the room. Defendant dressed in his robe and lay down on the bed.

Count Three (rape of a child) charged defendant with digital penetration of N.J. N.J.'s testimony was derived from the video of the forensic interview. In the interview, she recounted that defendant would touch her vagina with his hand. During N.J.'s forensic interview, she stated that on one of these occasions, defendant touched her on the outside and the inside of her vagina. When he touched the outside of her vagina, defendant moved his hand, but when he touched the inside of her vagina, his hand remained still.

Count Four (aggravated sexual battery) referred to conduct recalled by N.J. that occurred one night when she woke up and went into defendant's bedroom to watch television. He was using the computer, and she turned on the television. Defendant was wearing a black robe, and she was wearing pajamas. Defendant stood up from the computer desk and instructed N.J. to undress. Defendant directed N.J., who was unclothed, to lie down on the bed. He fondled the outside of her vagina with his fingers. He then touched the outside of her vagina with his penis. Defendant retrieved a towel, ejaculated, and used the towel to clean up. N.J. put her clothes on and observed defendant place the soiled towel under the bed. When the incident was over, defendant instructed N.J. not to tell anyone. N.J. went back to bed quietly to avoid waking M.J.

Count Five (rape of a child) involving M.J., also a child more than three (3) years of age but less than thirteen (13) years of age, charged defendant with digital penetration. During this incident, which M.J. described as the first time, defendant entered the victims' bedroom and awakened her. He placed his hand inside her pajama pants, underneath her underwear, and moved his finger around. Defendant then touched her "inside," and M.J. described that it "felt different." She told him to stop.

Count Six of the presentment (rape of a child) charged defendant with digital penetration of M.J. M.J. relayed that one night, defendant awakened her and directed her

to go to the living room. He instructed her to undress, but she left her shirt on. He told her to sit on the sofa. Defendant approached M.J., touched her with his finger, and moved it around "inside." When defendant was finished, M.J. picked up her clothes and went to her bedroom to dress.

At trial, the State introduced through each victim the DVD recording of the forensic interview conducted by the Children's Advocacy Center. The State presented Dr. Karla Lisbeth Garcia, a pediatrician at Children's Hospital at Erlanger and the medical director of the sexual assault center, as an expert in sexual assaults regarding children. Erlanger Hospital performed medical examinations for the Children's Advocacy Center. Through Dr. Garcia, the reports of the victims' medical examinations were introduced into evidence. Detective John Wright with the Red Bank Police Department testified about the law enforcement investigation into the allegations against defendant.

Special Agent Forensic Scientist Mark Eric Dunlap with the Tennessee Bureau of Investigation ("TBI") testified as an expert in serology and DNA analysis. He analyzed the towel that was referenced by N.J. and concluded that the major contributor of the non-sperm fraction matched defendant's DNA profile. He found additional genetic markers from a female minor contributor, and "based on that very limited DNA profile, [N.J.] cannot be excluded as the female contributor to that profile. [M.J.] and [J.B.] have been excluded from that . . . minor contributor profile." The State rested its case-in-chief.

Defendant testified on his own behalf and categorically denied all of the allegations against him. He acknowledged watching "normal" pornography on his computer and said that because he was not "savvy on the internet," he had no way of knowing if the victims had accessed his recent history or internet searches and happened upon his viewing. He noted that the view from the doorway into his bedroom provided a direct view of the computer. He posited that paid movie channels ("Home Box Office") could have been a possible source of "suggestive" television or pornography. Defendant stated that after J.B. and the victims moved out, he found a disc of pictures in a stack of discs beside the computer. It was in the same area where the victims kept their computer games. He viewed the disc and found 150-200 sexually explicit images of J.B., her ex-boyfriend, and a woman whom he did not know.

Defendant attempted to counter the State's scientific expert with his own DNA experts. Dr. Ronald T. Acton questioned Special Agent Dunlap's failure to exclude N.J. as a minor contributor, and Dr. Martin Shapiro challenged Special Agent Dunlap's statistical analysis and provided information about "transfer" DNA. Defendant presented the testimony of character witnesses Judy Cordell, Brittany Jones, Rhonda Jones, and Nancy Lane. Ms. Lane also offered testimony regarding a sexual encounter involving

J.B., J.B.'s boyfriend, and herself that was briefly witnessed by the victims. She further testified regarding defendant's character. The defense then rested its case.

Upon this evidence, defendant was convicted of four counts of rape of a child (counts one, two, three, and five); one count of aggravated sexual battery (count four); and one count of aggravated sexual battery as a lesser-included offense of rape of a child (count six).

Following a sentencing hearing, the trial court imposed mandatory twenty-five-year sentences for the child rape convictions and ten-year sentences for the aggravated sexual battery convictions. The trial court aligned the sentences pertaining to each victim consecutively, resulting in an effective fifty-year sentence.

On direct appeal, in addition to evidentiary issues, the Court of Criminal Appeals concluded that aggravated sexual battery is not a lesser-included offense of rape of a child. *State v. Howard*, No. E2014-01510-CCA-R3-CD, 2015 WL 4626860, at \*15-16 (Tenn. Crim. App. Aug. 4, 2015). Relying on *State v. Ortega*, No. M2014-01042-CCA-R3-CD, 2015 WL 1870095, at \*10 (Tenn. Crim. App. Apr. 23, 2015), *no perm. app. filed*, the court reasoned that the recent amendment to Tennessee Code Annotated section 40-18-110 had effectively abrogated "part (b)" of the *Burns* test for determining lesser-included offenses. *Howard*, 2015 WL 4626860, at \*15; *see Burns*, 6 S.W.3d at 466-67. Pursuant to this interpretation, the only applicable lesser-included offenses are codified in Tennessee Code Annotated section 40-18-110(f), (g).

In this Court, defendant filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal arguing that the court below erred in various evidentiary rulings. We granted the application, and in addition to the issues defendant raised, directed the parties to brief and argue the "question of whether the Court of Criminal Appeals erred in ruling that aggravated sexual battery is not a lesser-included offense of rape of a child" and to specifically "discuss whether part (b) of the test set forth in *State v. Burns*, 6 S.W.3d [453] (Tenn. 1999), survived the 2009 amendments to [Tennessee Code Annotated section] 40-18-110."

## II. Analysis

This case involves not only an issue of statutory construction but also the question of whether the trial court properly instructed the jury on lesser-included offenses. As issues involving statutory construction present questions of law, we review such questions de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). Whether the trial court

properly instructed the jury on a certain offense is a mixed question of law and fact, which also requires de novo review with no presumption of correctness. *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015) (citing *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001)).

## A. *State v. Burns*

Our resolution of this issue involves two inquiries: (1) did Tennessee Code Annotated section 40-18-110(g) abrogate part (b) of this Court's holding in *State v. Burns* regarding the determination of lesser-included offenses, and, if not, (2) is aggravated sexual battery a lesser-included offense of rape of a child?

## 1. History of Lesser-Included Offenses

In 1999, this Court issued the *Burns* opinion, which discussed the rationale behind the development of lesser-included offense instructions. 6 S.W.3d at 464. A brief synopsis of that history is useful to our analysis of this issue:

> "At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal. . . . [P]roviding the jury with the 'third option' of convicting on a lesser[-]included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard."

*Id.* (alteration in original) (quoting *Beck v. Alabama*, 447 U.S. 625, 633-34 (1980)).

In *Burns*, we reiterated that this provision required a trial court to "'instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense.'" *Id.* (quoting *State v. Langford*, 994 S.W.2d 126, 128 (Tenn. 1999)). After reviewing several approaches to defining the parameters of what constitutes a lesser-included offense, we adopted the following definition:

> An offense is a lesser-included offense if:
>
> > (a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

> (1) a different mental state indicating a lesser kind of culpability; and/or

> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Id.* at 466-67. Notwithstanding this test, an offense is also a lesser-included offense if the General Assembly expressly designates it as such. *See State v. Page*, 184 S.W.3d 223, 228 (Tenn. 2006) (citing *Rush*, 50 S.W.3d at 429 n.4); *State v. Elkins*, 83 S.W.3d 706, 710-11 (Tenn. 2002); *Burns*, 6 S.W.3d at 467 n.12 ("We hasten to add that trial courts should also consider any offenses that presently or in the future are expressly designated lesser-included offenses."). If the trial court determines that any evidence as to a lesser-included offense exists that reasonable minds could accept *and* that the evidence, viewed liberally in the light most favorable to the lesser-included offense, is legally sufficient to support a conviction, the trial court must so instruct the jury. *Burns*, 6 S.W.3d at 469.

2. Canons of Statutory Construction

In 2001, the legislature promulgated Tennessee Code Annotated section 40-18-110(a)-(e), which governs the mechanism by which a party may request an instruction on a lesser-included offense and the procedure to be utilized by the trial court in determining whether such an instruction is warranted. In 2009, the statute was amended by adding the following subsections:

(f) An offense is a lesser[-]included offense if:

(1) All of its statutory elements are included within the statutory elements of the offense charged;

(2) The offense is facilitation of the offense charged or of an offense that otherwise meets the definition of lesser[-]included offense in subdivision (f)(1);

(3) The offense is an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser[-]included offense in subdivision (f)(1); or

(4) The offense is solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser[-]included offense in subdivision (f)(1).

(g)(1) Second degree murder is a lesser[-]included offense of first degree murder as defined in [section] 39-13-202.

(2) Voluntary manslaughter is a lesser[-]included offense of premeditated first degree murder and second degree murder.

(3) Aggravated sexual battery is a lesser[-]included offense of aggravated rape.

(4) Sexual battery and sexual battery by an authority figure are lesser[-]included offenses of rape and aggravated rape.

Tenn. Code Ann. § 40-18-110 (2012).[2] Subsection (f) effectively codified parts (a) and (c) of the *Burns* test, while subsection (g) clarified, as was the legislature's prerogative, several lesser-included offenses. *See, e.g.*, *Rush*, 50 S.W.3d 429 at n.4. "Significantly, the statutory definition set out in section 40-18-110(f) does not include part (b) of the *Burns* test." *State v. Fayne*, 451 S.W.3d 362, 368 n.5 (Tenn. 2014). Although many cases have interpreted lesser-included offenses *vis-à-vis* subsection (f) of the statute, this Court has not considered a case that has required analysis of whether part (b) of the *Burns* test has been superseded by statute. *See id.* at 369.

---

[2] Effective July 1, 2016, the General Assembly amended Tennessee Code Annotated section 40-18-110(g)(3) by replacing the former language with, "Aggravated sexual battery is a lesser[-]included offense of aggravated rape, aggravated rape of a child, and rape of a child."

However, the Court of Criminal Appeals has construed the General Assembly's omission of *Burns* part (b) from Code section 40-18-110(f) as an abrogation of the same. *See, e.g.*, *Howard*, 2015 WL 4626860, at *15 (relying on *Ortega* and concluding "that aggravated sexual battery is not a lesser[-]included offense of rape of a child as a result of the amendment to Tennessee Code Annotated [section] 40-18-110 and the explicit exclusion of part (b) of the [*Burns*] test"); *Ortega*, 2015 WL 1870095, at *11 (concluding that "aggravated sexual battery is not, using the test set forth in Tennessee Code Annotated section 40-18-110(f)(1), a lesser[-]included offense of rape of a child"). Pursuant to the special order granting defendant's Rule 11 application in this case, the primary issue on appeal is whether part (b) of the *Burns* test survived the 2009 amendments to Tennessee Code Annotated section 40-18-110.

When engaging in statutory interpretation, "well-defined precepts apply." *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)); *Carter*, 279 S.W.3d at 564 (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds*, *Frazier v. State*, ___ S.W.3d ___, 2016 WL 3668035 (Tenn. July 7, 2016). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language[,] and . . . enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter*, 279 S.W.3d at 564 (citations omitted).

### a. Abrogation of Common Law

Had the General Assembly intended to abrogate part (b) of the *Burns* test as interpreted by the Court of Criminal Appeals, it is clear that the legislature would have significantly changed the common law of this state.

The basic right to trial by jury is guaranteed by the United States and Tennessee Constitutions. U.S. CONST. amend. VI; TENN. CONST. art. I, § 6. "'It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions.'" *Thorpe*, 463 S.W.3d at 859 (quoting *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)); *see also State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000) (citing

*State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). "This 'includes the right to jury instructions on each and every lesser-included offense embraced within the charged offense(s) and supported by the proof.'" *Thorpe*, 463 S.W.3d at 859 (quoting *State v. Davis*, 266 S.W.3d 896, 902 (Tenn. 2008)). Thus, a trial court has a corresponding duty to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See Burns*, 6 S.W.3d at 464; *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998).

"Nevertheless, while the General Assembly unquestionably has the constitutional and legislative authority to change the common law of this state, it must make clear its intention to do so." *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002) (citations omitted). This Court has held that "[w]ithout some clear indication to the contrary, we simply will not presume that the legislature intended to change the common law by implication." *Id.* "Additionally, 'new statutes change pre-existing law only to the extent expressly declared.'" *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *State v. Dodd*, 871 S.W.2d 496, 497 (Tenn. Crim. App. 1993)). "'If the statute does not include and cover such a case, it leaves the law as it was before its enactment.'" *Olsen v. Sharpe*, 235 S.W.2d 11, 12 (Tenn. 1950) (quoting *State v. Cooper*, 113 S.W. 1048, 1049 (Tenn. 1908)). The statute at issue in this case contains no such language "expressly" declaring that it should operate to render *Burns* part (b) inapplicable. Applying this premise, we conclude that the legislature did not intend to alter or abrogate part (b) of the common law *Burns* test.[3]

### b. Legislative History

On the face of the statute, the language utilized at first seems clear and unambiguous. However, "'[w]here, as here, the parties derive different interpretations from the statutory language, an ambiguity exists,' *Owens*, 908 S.W.2d at 926, and it is proper to look beyond the text to determine the statute's meaning." *Powers v. State,* 343 S.W.3d 36, 50 (Tenn. 2011) (footnote omitted) (citing *State v. Sherman*, 266 S.W.3d at 401). The *Powers* court clarified that

---

[3] Moreover, if we were to adopt the Court of Criminal Appeals' conclusion that because aggravated sexual battery is not listed as a specific lesser-included offense of rape of a child in Tennessee Code Annotated section 40-18-110(g), the legislature intended to exclude it, such conclusion would lead to an incongruous result. Tennessee's statutory scheme containing the criminal code defines hundreds of criminal offenses, only five of which are specifically listed in subsection (g). Applying the court's reasoning, an offense cannot be a lesser-included offense if it does not fall within the parameters of subsection (f) and is not one of the enumerated lesser-included offenses in subsection (g). The flaw in this approach is that now any conviction offense (not just the particular lesser-included offense involved in this case) that did not meet the criteria for a lesser-included offense under part (f) or part (g) is subject to reversal on habeas corpus review unless the defendant requested the particular lesser-included offense at issue. *See Demonbreun v. Bell*, 226 S.W.3d 321, 326 (Tenn. 2007). To avoid this unintended outcome, we determine that the legislature did not intend for the Court of Criminal Appeals' reasoning to apply.

[t]his proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute. Here, because we determine that the interpretations of the Act articulated by the petitioner and the State are both reasonable, an ambiguity exists.

*Powers*, 343 S.W.3d at 50 n.20. We note that the interpretation of the statute rendered by different panels of the Court of Criminal Appeals also creates an inherent ambiguity in the language of the statute. *See, e.g.*, *Howard*, 2015 WL 4626860, at \*15; *Ortega,* 2015 WL 1870095, at \*7-9; *State v. Stewart*, No. M2011-01994-CCA-R3-CD, 2013 WL 3820992, at \*37 (Tenn. Crim. App. Jul. 22, 2013) (noting that the legislature "expressly" provided for the determination of lesser-included offenses and excluded aggravated sexual battery as a lesser-included offense of rape of a child, and further stating, "[T]he elements of aggravated sexual battery and rape of a child are not the same and *neither is a lesser*[-]*included offense of the other . . . .*") (emphasis added); *State v. Harrison*, No. E2008-01082-CCA-R3-CD, 2010 WL 3238309, at \*10-11 (Tenn. Crim. App. Aug. 17, 2010) (concluding that the *Burns* test applied to offenses committed prior to July 1, 2009). *But see State v. Isabell*, No. W2013-00435-CCA-R3-CD, 2014 WL 3744580, at \*16 (Tenn. Crim. App. July 28, 2014), *perm. app. denied* (Tenn. Oct. 17, 2014) (concluding that Tennessee Code Annotated section 40-18-110 "does not expressly abrogate *Burns* part (b)").[4] We find this proposition applicable to the matter before us.

Reviewing the legislative history of the statute, Representative Kent Coleman, the sponsor of House Bill 588 ("H.B. 588"), explained to the House Judiciary Criminal Practice and Procedure Subcommittee on April 15, 2009, "This bill clarifies the instructions that a trial judge has to give the jury regarding lesser offenses to the offense of which they're charged, and *there's some confusion in the law right now*. This just clarifies what those charges would need to be for lesser-included offenses." *Hearing on H.B. 588 Before the H. Judiciary Criminal Practice and Procedure Subcomm.*, 2009 Leg., 106th Sess. (Tenn. 2009) (statement of Rep. Kent Coleman, Member, H. Judiciary Criminal Practice and Procedure Subcomm.) (emphasis added). When presenting H.B. 588 to the House Calendar and Rules Committee on April 28, 2009, Representative Coleman stated, "This bill basically deals with the judge's charge of . . . lesser[-]included offense[s] in criminal cases. It's an effort to *clarify* which items must be included in lesser offenses when instructing the jury. *It's an effort to clarify a question that exists under the current law*." *Hearing on H.B. 588 Before the H. Calendar and Rules Comm.*,

---

[4] We note that pursuant to Supreme Court Rule 4(E)(1), this case was designated as "Not for Citation." Accordingly, while this opinion has no precedential value, it is nonetheless illustrative of the premise that Tennessee Code Annotated section 40-18-110 has been subject to differing interpretations.

2009 Leg., 106th Sess. (Tenn. 2009) (statement of Rep. Kent Coleman, Member, H. Judiciary Criminal Practice and Procedure Subcomm.) (emphasis added).

The Senate Judiciary Committee considered Senate Bill 783/ H.B. 588 ("S.B. 783") on May 27, 2009.  Senator Doug Overbey explained:

Senate Bill 783 is brought to clarify the law regarding what constitutes a lesser-included offense.  This bill specifies that an offense is a lesser-included offense if, one, all of its statutory elements are included within the statutory elements of the offense charged, or, two, the offense is a facilitation, attempt, or solicitation of the offense charged, or of an offense that otherwise meets the definition described in section one. This bill also specifies that second degree murder is a lesser-included offense of first degree murder, if the first degree murder is committed either in the killing of another committed in the perpetration of or attempt to perpetrate in the first degree murder, act of terrorism, arson, rape, robbery, various other offenses, or a killing of another committed as a result of the unlawful throwing, placing, or discharging of a destructive device or bomb.  In other words, this bill is brought to *clear up* what is a lesser-included offense.

*Hearing on S.B. 783 Before the S. Judiciary Comm.*, 2009 Leg., 106th Sess. (Tenn. 2009) (statement of Sen. Doug Overbey, Secretary, S. Judiciary Comm.) (emphasis added).

Addressing the senate on June 8, 2009, Senator Overbey explained that

[u]nder section one of the amendment you have paragraph (f) and paragraph (g).  Paragraph (f) is to clarify by definition what's a lesser-included offense.  Apparently, *confusion exists under current law*, and, so that, the purpose of codifying it is so that the judges will know exactly what to charge the jury with regard to a lesser-included offense.  Paragraph (g) of section one makes some specific references as to what are lesser-included offenses as interpreted by case law.  This puts it into statute, again, so there'll be no question about these specific offenses are lesser-included offenses of the offense charged.

*Hearing on S.B. 783 Before the Senate*, 2009 Leg., 106th Sess. (Tenn. 2009) (statement of Sen. Doug Overbey, Secretary, S. Judiciary Comm.) (emphasis added).

After proposed amendments by the state senate, Representative Coleman addressed the House of Representatives on June 9, 2009:

- 12 -

This bill deals with lesser charged offenses as far as jury instructions are concerned. . . . Senate amendment number two adds that in the case of second degree murder, voluntary manslaughter is a lesser-included offense of both premeditated first degree murder and second degree murder. Amendment number two also specifies that aggravated sexual battery is a lesser-included offense of aggravated rape. Sexual battery and sexual battery by an authoritative figure is a lesser-included offense in the case of rape and aggravated rape. It says that second degree murder is a lesser-included offense in the case of all first degree murders under all circumstances. This bill is intended to apply *only to the offenses that are included within the bill*. Therefore the *Burns* and *Page* decisions would still be applicable in certain cases. But in the cases that are specified in this bill as amended, the lesser-included offenses would be applicable in those charges.

*Hearing on H.B. 588 Before the House*, 2009 Leg., 106th Sess. (Tenn. 2009) (statement of Rep. Kent Coleman, Member, H. Judiciary Criminal Practice and Procedure Subcomm.) (emphasis added). The bills passed both houses of the legislature and became effective as Tennessee Code Annotated section 40-18-110(f) and (g) in July 2009.

As evidenced by the legislative history, S.B. 783/ H.B. 588 was introduced to alleviate confusion in an area of law. Although it is unclear what question the legislature sought to answer in passing the statute, what remains clear is that neither the house nor the senate intended to abrogate *Burns* in its entirety. To the contrary, Representative Coleman, the sponsor of the bill, stated unequivocally that *Burns* would still apply in certain cases, presumably the "part (b)" cases that would not fall within the purview of the amended statute. *Id.* The bill was presented for a vote and was passed after this statement. Thus, it appears that the legislature intended for part (b) of *Burns* to survive the amendments.

3. Constructive Amendment

The State argues that we should not reach this issue because defendant consented to an amendment of the indictment and as such, the issue should be pretermitted. Specifically, the State contends that defendant is due no relief from his conviction of aggravated sexual battery as a lesser-included offense of rape of a child because he constructively consented to an amendment of the indictment by failing to object to the trial court's instructions to the jury.

During the charge conference, the trial court indicated its intent to instruct the jury on aggravated sexual battery as a lesser-included offense of rape of a child, and counsel

- 13 -

for defendant neither assented nor objected. However, "'a defendant's *acquiescence* to a jury instruction based on an incorrect belief that an offense is a lesser[-]included offense is simply insufficient to transform an erroneous jury instruction into a valid amendment of an indictment by that defendant's consent.'" *Demonbreun*, 226 S.W.3d at 326 (quoting *State v. Stokes*, 24 S.W.3d 303, 306 (Tenn. 2000)). Accordingly, we reject the State's contention that defendant consented to amend the indictment in this case.

## 4. Aggravated Sexual Battery is a Lesser-Included Offense of Rape of a Child

Having concluded that part (b) of the *Burns* test continues to be applicable to determining lesser-included offenses not specifically included in Tennessee Code Annotated section 40-18-110(f) and (g), we now must determine whether aggravated sexual battery is a lesser-included offense of rape of a child for offenses occurring prior to the July 1, 2016 amendment. We hold that it is.

Without analysis of this particular issue, this Court reviewed a conviction for aggravated sexual battery as a lesser-included offense of rape of a child in *Elkins*, 83 S.W.3d at 710-11. In that case, the trial court instructed the jury on aggravated sexual battery as a lesser-included offense, and the jury convicted him of that offense. *Id.* at 709-10. We reversed and remanded the matter for a new trial because the trial court failed to instruct the jury on *other* appropriate lesser offenses, not because the court instructed on *this* offense. *Id.* at 710. We reiterated that aggravated sexual battery is, indeed, a lesser-included offense of rape of a child in *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) ("In [*Elkins*, 83 S.W.3d at 713], this Court recognized that aggravated sexual battery is a lesser-included offense of rape of a child . . . .").

Indeed, prior to the 2009 amendment to section 40-18-110, several panels of the Court of Criminal Appeals also affirmed convictions of aggravated sexual battery as a lesser-included offense of rape of child pursuant to a *Burns* analysis. *See, e.g.*, *State v. Monette*, No. M2006-02462-CCA-R3-CD, 2008 WL 4211602, at *3 (Tenn. Crim. App. Sept. 4, 2008) (noting that defendant's argument "ignores established precedent which has repeatedly held that, when the victim is less than thirteen years of age, aggravated sexual battery is a lesser-included offense of rape of a child"); *State v. Biggs*, 218 S.W.3d 643, 657 (Tenn. Crim. App. 2006) (concluding that the trial court properly instructed the jury on aggravated sexual battery as a lesser-included offense pursuant to the *Burns* analysis); *State v. Zirker*, No. M2003-02546-CCA-R3-CD, 2005 WL 1122646, at *10 (Tenn. Crim. App. May 12, 2005) ("It is clear in Tennessee that aggravated sexual battery is a lesser-included offense of rape of a child."); *State v. Walters*, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *8 (Tenn. Crim. App. Nov. 30, 2004) (stating that "aggravated sexual battery when the victim is less than thirteen . . . [is] [a] lesser[-]included offense[] of rape of a child"); *State v. Salcido*, No. M1999-00501-CCA-R3-CD,

2001 WL 227357, at *7 (Tenn. Crim. App. Mar. 8, 2001) (concluding, after a thorough analysis, that "[a]ggravated sexual battery is, therefore, a lesser-included offense of rape of a child under part (b) of the *Burns* test").

Although this Court has twice clarified that aggravated sexual battery is a lesser-included offense of rape of a child, *Evans*, 108 S.W.3d at 237; *Elkins*, 83 S.W.3d at 713, it appears that we have done so without engaging in a thorough analysis of *Burns* part (b). Part (b) of the *Burns* test requires that the elements of the lesser-included offense be included in the elements of the charged offense, except to the extent that the lesser-included offense "contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious risk of harm to the person, property or public interest." *Burns*, 6 S.W.3d at 466-67.

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7). As applicable to this case, a defendant commits the offense of aggravated sexual battery when he or she engages in "unlawful sexual contact with a victim" and "[t]he victim is less than thirteen (13) years of age." *Id.* § 39-13-504(a)(4). The statutory definition of "sexual contact" contemplates that the "intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6).

The primary difference between the two criminal offenses is that rape of a child requires "unlawful sexual penetration," while aggravated sexual battery is accomplished by "unlawful sexual contact." Because aggravated sexual battery requires that the touching be reasonably construed as being for the purpose of sexual arousal or gratification, which is not an element of child rape, it cannot be considered a lesser-included offense in this case under *Burns* part (a). Pursuant to *Burns* part (b), however, unlawful sexual contact involves a less serious risk of harm to the person, *Burns*, 6 S.W.3d at 466-67, and a defendant's "intent to touch a victim's intimate parts for the purpose of sexual arousal constitutes a mental state reflecting a lesser degree of culpability than the reckless, knowing, or intentional commission of sexual penetration for any reason," *State v. Greer*, No. M1998-00789-CCA-R3-CD, 2000 WL 284180, at *7 (Tenn. Crim. App. Mar. 17, 2000). Accordingly, we hold that aggravated sexual battery is a lesser-included offense under part (b) of the *Burns* test and that the trial court properly instructed the jury as to this offense. Defendant is not entitled to relief from his conviction for aggravated sexual battery as a lesser-included offense of rape of child.

- 15 -

The Court of Criminal Appeals' conclusion to the contrary is hereby reversed, and defendant's conviction is reinstated.

## B. Evidentiary Issues

Defendant's remaining assignments of error involve matters of evidentiary rulings by the trial court.

## 1. Standards of Review

Three of the evidentiary issues raised by defendant involve a matter of hearsay. This Court has recently addressed the confusion[5] regarding the appropriate standard of review to be employed in this setting and stated as follows:

> The standard of review for rulings on hearsay evidence has multiple layers. Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, then the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one [of] the exceptions to the hearsay rule—are questions of law subject to de novo review.
>
> If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement. But if a hearsay statement does fit under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement. However, the statement may

[5] *See, e.g.*, *Pylant v. State*, 263 S.W.3d 854, 871 n.26 (Tenn. 2008) (maintaining that the standard of review for hearsay issues is abuse of discretion); *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (holding that "questions concerning the admissibility of [hearsay] evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record"); *Perry v. State*, No. W2011-01818-CCA-R3-PC, 2012 WL 2849510, at *3 (Tenn. Crim. App. July 11, 2012) (stating that standard of review for admissibility of evidence is abuse of discretion). *But see Perry*, 2012 WL 2849510, at *7 (Bivins, J., concurring) (applying de novo standard of review to hearsay issues); *State v. Gilley*, 297 S.W.3d 739, 760 (Tenn. Crim. App. 2008) (stating that whether a statement is offered to prove the truth of the matter asserted is "necessarily . . . a question of law" and is not subject to review under abuse of discretion standard); *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007) (holding that appellate review of hearsay issues is de novo with no presumption of correctness).

otherwise run afoul of another rule of evidence. For example, a trial court may decline to admit an excited utterance if it finds the utterance lacks relevance under [Tennessee Rules of Evidence ] 401 & 402 or if it finds the utterance's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." If a trial court excludes otherwise admissible hearsay on the basis of Rule 401, 402, or 403, this determination is reviewed for abuse of discretion.

*Kendrick v. State*, 454 S.W.3d 450, 479-80 (Tenn. 2015) (citations omitted), *cert. denied*, 136 S.Ct. 335 (2015).

However, we review a trial court's decision regarding the admissibility of evidence for abuse of discretion. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015) (citing *State v. Parker*, 350 S.W.3d 883, 896-97 (Tenn. 2011)). "'Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *Id.* (quoting *Parker*, 350 S.W. 3d at 897); *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008).

### 1. Nancy Lane's Testimony

Defendant contends that the trial court erred in precluding one of his witnesses, Nancy Lane, from testifying about a conversation she allegedly had with the victims after they made the allegations against defendant. Ms. Lane, a close friend of the victims' mother, testified for the defense. Defendant sought to introduce testimony from Ms. Lane that she had interacted with the victims at the Red Bank Festival and that, when she asked them if anyone had "hurt" them, they responded in the negative. The State interposed an objection, and the following bench conference occurred:

[STATE]:          Your Honor, may we approach?

THE COURT:       You may.

(Thereupon, a bench conference was held on the record in the presence of the jury but out of the hearing of the jury and the following proceedings were had:)

[STATE]:          I mean I'm objecting to her saying whatever she's going to testify to about after this allegation came out.

- 17 -

I don't know what she's going to testify to. I don't know what the foundation is for it or how it is even relevant.

THE COURT: Okay. So you've got a relevance objection?

[STATE]: Yes, sir.

THE COURT: What is she going to say?

[DEFENSE]: She saw the children at the Red Bank festival in April after this allegation. She asked the children if anyone had hurt them and they told her no.

THE COURT: What do you say about that, [counsel]?

[STATE]: I mean there's lots of context. I mean hurt them means – I mean, if anyone had hurt them doesn't necessarily mean that someone wants to talk to somebody about some sort of, you know, being raped by somebody. I mean that's not something that people just commonly just say, hey, yeah, I was raped last week. You know what I mean?

THE COURT: That's not an evidentiary objection.

[STATE]: I'm objecting to relevancy because it's not relevant.

THE COURT: Well, whether they were hurt or not is relevant. That's the whole issue of the case.

[STATE]: Right. But whether what they told her is not relevant in this particular matter because it doesn't prove or disprove anything.

THE COURT: Well, the defense thinks it does.

[STATE]: I would also argue that it's hearsay, it's an out-of-court statement entered for the truth of the matter asserted.

THE COURT: I think that's correct. What do you say about that, [counsel]?

[DEFENSE]:        We're not offering it for the truth of the matter asserted, just that she had contact with the children, she asked them about it, they said no.

THE COURT:        Well, if you're not offering it for the truth of the matter asserted then it's not relevant.

[DEFENSE]:        Then we're offering it for the fact that she had contact with the children.

THE COURT:        Well, that's not relevant to the – any issue at hand.

[DEFENSE]:        That she's seen the children since this happened.

THE COURT:        Well, that's not really relevant either; so I will sustain the objection on both counts –

[STATE]:          Thank you, Your Honor.

Defendant specifically contends that this testimony should have been admitted as being indicative of the victims' state of mind pursuant to the hearsay exception found in Tennessee Rule of Evidence 803(3). He also argues that this Court should apply our holding in *State v. Brown* and find that this testimony was "critical to the defense." 29 S.W.3d 427 (Tenn. 2000).

We note, first, that during the bench conference, defendant's trial counsel did not argue an exception to the exclusionary hearsay rule. In addition, trial counsel did not argue the applicability of this Court's *Brown* decision.[6] It is well-settled that a defendant may not advocate a different or novel position on appeal. *State v. Leach*, 148 S.W.3d 42, 55 (Tenn. 2004) (citing *Johnson v. State*, 38 S.W.3d 52, 60 n.8 (Tenn. 2001)); *State v.*

---

   [6] Tangential to his argument with respect to *State v. Brown*, defendant asserts, as he did in the Court of Criminal Appeals, that "[w]hile the [S]tate is technically the 'party' in a criminal case, the complainant in a criminal case is analogous to a party." (citing *Brown*, 29 S.W.3d at 435). He relies on a statement by this Court in *Brown* that the proffered evidence, which is similar to that at issue in this case, is similar to evidence that is admissible pursuant to Tennessee Rule of Evidence 803(1.2)(A); *Brown*, 29 S.W.3d at 435. However, this Court continued to clarify that "[b]y so stating, we are not suggesting that the proof in this case should have been admitted as an admission by a party opponent, nor are we holding that the complaining witness in a criminal case is a party for purposes of Rule 803(1.2)(A)." The Court of Criminal Appeals properly concluded that "a rape victim is not a 'party' for purposes of the hearsay exception for party admissions." *Howard*, 2015 WL 4626860, at *8 (citing *State v. Flood*, 219 S.W.3d 307, 314 (Tenn. 2007)).

- 19 -

*Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994) (stating that a defendant may not assert one ground for relief in the trial court and then pursue a new or different theory on appeal). As such, both arguments are waived. Moreover, we note that the Court of Criminal Appeals thoroughly analyzed this issue and addressed all of defendant's arguments. *Howard*, 2015 WL 4626860, at *7-10. We agree with its conclusions.

## 2. Children's Advocacy Center Records

At trial, State's witness, Dr. Garcia, was called to testify about the medical examinations of the victims performed at the Children's Advocacy Center by nurse Kathy Spada at the request of law enforcement. Ms. Spada was not called as a witness at trial; the reports were entered into evidence during Dr. Garcia's testimony. Defendant did not object to the introduction of the reports themselves into evidence but, rather, challenged the introduction of the "subjective findings or anything that may have been said to the examiner" as well as the "comments that are in the report[s] which are attributed to the children" during the examinations that appear in the reports.

The trial court permitted the reports to be admitted pursuant to Tennessee Rule of Evidence 803(6) as a record of regularly conducted activity. The trial court concluded that "the subjective findings of the examiner are admissible" because they were recorded "for a business purpose and it's part of a regularly conducted activity." The Court of Criminal Appeals agreed with the trial court's analysis in this respect, as do we. *See, e.g.*, *State v. Cannon*, 254 S.W.3d 287, 303 (Tenn. 2008) (holding that "to the extent medical records may be properly categorized as business records, such records are properly categorized as nontestimonial"). We also note for the record that during oral argument on this issue, counsel for defendant conceded that the reports were admissible pursuant to the "business records exception."

However, our inquiry does not end there. In his appeal to this Court, defendant asserts that the trial court erred in admitting the reports, Exhibits 10 and 11, because the reports contained comments that were attributed to the victims and that the reports were not generated for the purposes of medical diagnosis or treatment because "[n]o medicine appears to have been prescribed[] and the report was subsequently provided to [the] Hamilton County District Attorney for use at trial." In his brief, defendant disagrees that the victims' statements were admissible under Tennessee Rule of Evidence 803(4) because "[t]he report's ultimate conclusion is not as to the current physical or mental health of the children, but whether the examination can confirm or rule out sexual abuse, a past fact that would need to be proven at trial" and, as such, the statements run afoul of the Confrontation Clause.

Thus, this issue demands consideration of Tennessee Rule of Evidence 805, which addresses "hearsay within hearsay." The Rule provides that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules or otherwise by law." Tenn. R. Evid. 805. While the trial court properly concluded that the reports were admissible as business records, the statements made by the victims contained within the reports must also satisfy an exception to the hearsay rule to be admissible. *Howard*, 2015 WL 4626860, at *11 (citing *State v. Rucker*, 847 S.W.2d 512, 516 (Tenn. Crim. App. 1992), *overruled on other grounds by State v. McLeod*, 937 S.W.2d 867, 870 n.2 (Tenn. 1996)).

The trial court applied Tennessee Rule of Evidence 803(4) as the exception allowing introduction of the victims' hearsay statements. Statements made for the purpose of medical diagnosis and treatment are admissible pursuant to this exception to the hearsay rule. The Rule provides that "[s]tatements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment" are admissible as an exception to the general exclusion of hearsay testimony. Tenn. R. Evid. 803(4). We have explained the rationale behind this exception as well as the challenges presented in cases similar to the case at bar:

> Rule 803(4) is based upon the notion that statements made under conditions prescribed by the rule are presumptively trustworthy. Courts have reasoned that patients seeking medical assistance are strongly motivated to be truthful because accurate diagnosis and effective treatment often depend, in part, upon what patients tell health care providers. *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985); *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980). "[T]hus[,] the declarant has a self-interested motive to tell the truth." *State v. Barone*, 852 S.W.2d 216, 220 (Tenn. 1993) (citing NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 803(4).1 at 425 (2d ed. 1990)). Moreover, if physicians or other medical personnel rely upon the statement in diagnosing and treating the patient, then the statement should be sufficiently trustworthy to be admissible in a court of law. *Id*. at 220; *State v. Edwards*, 868 S.W.2d 682, 699 (Tenn. Crim. App. 1993). The patient's strong motivation to be truthful constitutes the basis for similar evidentiary rules in other jurisdictions as we will discuss below.

> This rationale, however, becomes questionable when the patient is a child because children may not be able to understand the need to be truthful in the medical setting. Nevertheless, courts must adhere to the evidentiary rules to ensure, to the extent possible, that only those out-of-court

statements which satisfy the requirements of the rule are admitted into evidence.

*McLeod*, 937 S.W.2d at 870 (alterations in original). For these reasons, the *McLeod* court held that for a statement by a child declarant to be admissible pursuant to Rule 803(4), the trial court must hold an evidentiary hearing outside the presence of the jury to consider all relevant evidence offered pertaining to the making of the statement. *Id.* at 869.

The trial court in this case followed the requisite protocol and held a jury-out hearing prior to admitting the reports in question. During the hearing, Dr. Garcia testified, "I need to know what went where[,] how many times, [and] associated symptoms that go along with it, so I can diagnose [the] child appropriately and provide medical help appropriately." While Dr. Garcia did not personally perform the examinations, she reviewed every report completed by the center. The trial court found it "clear" that Dr. Garcia's testimony established that the physical examinations were "in large part, if not totally, for purposes of medical diagnosis and treatment." We agree with this conclusion. Dr. Garcia also testified during voir dire examination that the center created reports to document the examinations given. She said, "Any interaction that we have with a patient in the course of our daily, daily part of seeing patients, we have to make a record of that communication and contact and what we did with that patient." Because of the nature of the examination, the reports are stored in a separate file, but the reports are nonetheless part of Erlanger's medical records. The report is not automatically disseminated to law enforcement or the district attorney's office; those entities must request a release to obtain the reports. Dr. Garcia's testimony clearly reflects that the statements made by the victims were intended for the purpose of medical diagnosis or treatment. This is consistent with Tennessee jurisprudence. *Cannon*, 254 S.W.3d at 303 (holding that statements in medical records given for the primary purpose of medical diagnosis and treatment are nontestimonial); *State v. Stinnett*, 958 S.W.2d 329, 332-33 (Tenn. 1997) (holding that statements were admissible because the six-year-old victim was old enough to understand the nature of the medical examination and the reason therefor, her statement to the physician and her trial testimony were consistent in all "pertinent respects," she was examined immediately after the allegations and nearly four years prior to trial, and there was no indication that the victim was motivated to be untruthful).

To the extent that defendant implies (as he did at trial) that the statements were made for the purpose of prosecution and not for medical treatment, this issue is without merit. The trial court heard this objection and specifically stated that "none of that's been established here through Dr. Garcia. Dr. Garcia testified that this was a medical examination[] [and] that she's the . . . medical director of the sexual assault center. As such, she's qualified to talk about records of that center, and she's talked about the

reasons why these examinations take place . . . ." The trial court ruled correctly. We have repeatedly held that "'statements made to a physician identifying a perpetrator who is a member of the child's household may be reasonably pertinent to proper diagnosis and treatment of emotional and psychological injury.'" *Stinnett*, 958 S.W.2d at 333 (quoting *State v. Livingston*, 907 S.W.2d 392, 397 (Tenn. 1995)); *see also Rucker*, 847 S.W.2d at 518-20. Moreover, we note that the Confrontation Clause[7] is not implicated in this case because both victims testified at length at trial and were subject to cross-examination about the statements contained within the reports.

Pursuant to *McLeod*, the trial court must hold an evidentiary hearing outside the presence of the jury to consider all relevant evidence offered pertaining to the making of the statement. *McLeod*, 937 S.W.2d at 869. The court should consider "the circumstances surrounding the making of the statement, which would include the timing of the statement and its contents." *Id.* at 871. The inquiry into the circumstances, for instance, could include, depending on the facts of each case, whether the victim's statement was in response to suggestive or leading questions and/or whether "any other factor that may affect trustworthiness, such as a bitter custody battle or family feud." *Id.* Defendant offered no such argument at trial; thus, the trial court did not have the opportunity to rule upon any such circumstance.

The Court of Criminal Appeals, in its review, considered such circumstances as the age of the victims, the timing of their statements, and the degree of trustworthiness of the victims' statements based upon suggestibility due to their viewing of their mother engaged in a sexual act with two other people and their potential discovery of a disc containing "adult" pictures of this act. *Howard*, 2015 WL 4626860, at *12-13. However, the victims were not questioned about the possible tainting of their statements in this regard, and "[t]he record is devoid of any other type of evidence, such as a family feud or custody battle, that might affect the trustworthiness of the testimony." *Id.* at *13.

The trial court correctly ruled that the Children's Advocacy Center reports were admissible pursuant to the business records exception and that the hearsay statements contained within the reports constituted statements made for the purpose of medical diagnosis or treatment, a hearsay exception. Tenn. R. Evid. 803(4), (6). The reports were admissible, and defendant is without relief as to this claim of error.

### 3. Victims' Records

Defendant maintains that the trial court erred in excluding N.J.'s medical records wherein she complained, falsely, about a hearing problem four years prior to making the allegations at issue in this case. The medical records established that when N.J. was six

---

[7] *See Crawford v. Washington*, 541 U.S. 36 (2004).

years old, she experienced a two-day earache and a fever. Three months later, she reported difficulty hearing to her doctor, which was unfounded. Defendant attempted to introduce N.J.'s medical records to attack N.J.'s credibility, but the State filed a motion in limine to exclude the records. The trial court excluded the records, concluding that a false report made four years before the incidents in this case was not relevant and that even if it were, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Tenn. R. Evid. 401, 403.

We hold that the trial court did not abuse its discretion in excluding the records. The trial court stated that it did not find that the then-six-year-old victim was dishonest about her ability to hear and that her "complaint about an inability to hear on occasion after she had had an earache within a recent period of time" was not "very probative at all with regard to her complaining as a ten-year-old of having been sexually assaulted." The trial court, in the alternative, concluded that the probative value was "slight" and that the probative value was substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403. The trial court did not apply an incorrect legal standard, reach an illogical conclusion, base its decision on a clearly erroneous assessment of the evidence, or employ reasoning that caused an injustice to the complaining party. *See Herron*, 461 S.W.3d at 904; *Banks*, 271 S.W.3d at 116. This issue is without merit.

### 4. Detective Wright's Testimony

During the cross-examination of Detective Wright, defendant sought to elicit testimony concerning Detective Wright's telephone call to the Children's Advocacy Center. The following exchange took place:

Q. So, Officer Wright, I'll ask you again, did you call CPS at that time?

A. I did.

Q. Why?

[STATE]: Objection.

. . . .

[DEFENSE]: May we approach, Your Honor?

THE COURT: You may.

(Thereupon, a bench conference was held on the record in the presence of the jury but out of the hearing of the jury and the following proceedings were had:)

STATE: He's about to get into hearsay in that document about – I'm assuming that you're going to ask that they, you know, some of the information about she was seen with [defendant] after; right?

DEFENSE: That would be where we're going, yeah.

STATE: Which is actually hearsay within hearsay. The step-grandfather told the detective who told Ms. Powell, so I mean, it's straight hearsay. He can't ask about that.

THE COURT: So you're asking him why he called CPS?

DEFENSE: We're asking for the impetus of that particular action, as part of his investigation, why is he doing that.

THE COURT: Why did he call CPS, and his answer you want to elicit would be what?

DEFENSE: That he received information that [defendant] and [J.B.] were seen together. They were still, they were still together.

THE COURT: You're offering that for the truth of the matter asserted, aren't you?

DEFENSE: Well, Your Honor, I think – I'm curious, now we've heard as to why CPS is being called, or that CPS is called, why, why is this involvement continuing after this, after this evening.

THE COURT: Well, but what are you trying to show? Are you trying to show that he called CPS because Ms.

|   |   |
|---|---|
| | Howard and – or [J.B.] and [defendant] were together? |
| DEFENSE: | Yes, Your Honor. |
| THE COURT: | Well, he doesn't know that but for the hearsay. |
| DEFENSE: | We're not offering it for the truth. |
| THE COURT: | What? |
| DEFENSE: | We're not offering it for the truth of the matter, Your Honor. We're offering it for the explanation of why he called CPS. At this point all the jury knows is that he called CPS. |
| THE COURT: | Well, now you're – |
| DEFENSE: | The way it's being left, he could be calling CPS because [defendant] is trying to molest the girls again. |
| THE COURT: | No, he called CPS, as I understand it, he called CPS because he received a hearsay statement/report that [defendant] was with [J.B.]. Do you know how that turned out? |
| DEFENSE: | The – I don't know what it – |
| THE COURT: | You don't know what happened after? |
| DEFENSE: | No, Your Honor. All I know is what I've learned from Detective Wright. |
| THE COURT: | No, I think that's not admissible. I'll sustain the objection. |
| STATE: | Thank you. |

To be clear, Detective Wright was asked to testify about information he received from the victims' grandfather regarding their mother being seen with defendant. In his brief, defendant advances the state of mind exception to the hearsay rule, arguing that the

- 26 -

state of mind of the victims' mother, presumably that by being around defendant after the allegations had been made demonstrated that she did not believe the victims, was relevant. However, this position was not offered by trial counsel; thus, this departure in strategy requires that we review this issue for plain error only.

As noted above, Tennessee Rule of Evidence 803(3) allows admission of a hearsay statement if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." Because the Advisory Commission Comments to Rule 803(3) clarify that "only the declarant's conduct, not some third party's conduct, is provable by [the state of mind] hearsay exception," this exception is inapplicable to this scenario. In his brief, defendant specifically argues that "the excluded testimony . . . would have gone to the state of mind of the victims' [m]other." The declarant's, the victims' grandfather, state of mind is not at issue, and this statement cannot be attributed to demonstrate the mother's state of mind. As such, a clear and unequivocal rule of law has not been breached.

On appeal, defendant also argues that the *Brown* decision should apply to this issue. *See Brown*, 29 S.W.3d at 343. Again, because this position was not advocated during trial, the argument is subject to plain error review. Aside from citing the *Brown* case, defendant sets forth no argument regarding the three factors that this Court must find before evidence may be received pursuant to *Brown*. He does not assert that this evidence was critical to the defense, and under the facts of this case, we cannot say that it was. The mother testified at trial and acknowledged having called defendant to perform a repair or adjustment on her washing machine, a time during which she stated that the victims remained in their bedroom and did not see defendant. Thus, J.B. admitted to having contact with defendant after the allegations had been made, which was the purported reason that trial counsel asserted for allowing the testimony of Detective Wright. In addition, she was subject to cross-examination on any other instances of contact she may have had with defendant. As such, defendant is not entitled to relief.

### III. Conclusion

We conclude that Tennessee Code Annotated section 40-318-110(f) and (g) did not abrogate part (b) of *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), and that analysis of whether an offense constitutes a lesser-included offense of a charged offense is still proper under part (b) unless it is specifically encompassed by the statute. Accordingly, we conclude that defendant's conviction of aggravated sexual battery as a lesser-included offense of rape of a child was proper. The judgment of the Court of Criminal Appeals is therefore reversed in this regard. The court's judgment is, on all remaining issues, affirmed. Costs of this appeal are taxed to the defendant, Glen Howard, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE