IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2018 Session

## STATE OF TENNESSEE v. CHRISTOPHER GATEWOOD

**Appeal from the Criminal Court for Hamilton County**
**No. 292487    Don. W. Poole, Judge**

———————————

### No. E2017-00653-CCA-R9-CD

———————————

The Defendant, Christopher Gatewood, is charged in the Hamilton County Criminal Court with rape of a child. *See* T.C.A. § 39-13-522 (2014). The State contends in this interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 that the trial court erred in granting the Defendant's motion in limine to exclude evidence of the alleged victim's statements to a nurse practitioner on Confrontation Clause grounds. We affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Order of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; M. Neal Pinkston, District Attorney General; Boyd Patterson and Leslie Longshore, Assistant District Attorneys General, for the appellant, State of Tennessee.

D. Marty Lasley (on appeal) and William Speek (at hearing and on appeal), Chattanooga, Tennessee, for the appellee, Christopher Gatewood.

**OPINION**

The Defendant's charge relates to the alleged rape of his then-twelve-year-old stepdaughter, A.J. Defense counsel filed a motion in limine to exclude hearsay evidence and statements from non-testifying witnesses. The motion did not address specific hearsay or witnesses, but at the hearing on the motion, the parties identified the evidence at issue as A.J.'s statements to a nurse practitioner at the Children's Advocacy Center. A.J.'s statements included allegations of vaginal and anal rape the previous evening and of past sexual touching by "her dad." After receiving evidence at the hearing, the trial

court granted the Defendant's motion in limine to exclude evidence of A.J.'s statements. The court found that the primary purpose of the statements was "testimonial" and, as such, admission of them would violate the Defendant's constitutional right to confront adverse witnesses. The State filed a motion for permission to pursue an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9, and the trial court granted the State's motion. The State then filed an application for an interlocutory appeal in this court, which was granted.

## Facts

At the hearing on the motion in limine, Ashley O'Barr Haynes, a pediatric nurse practitioner at the Children's Advocacy Center of Hamilton County, testified as an expert witness in child sexual assault examination. She said that on August 29, 2013, A.J. and A.J.'s mother arrived at the Children's Advocacy Center and completed paperwork related to demographic information and medical history. Nurse Practitioner Haynes said that she obtained A.J.'s medical history for the purpose of medical diagnosis and treatment and that she did not conduct a forensic interview. She said the interview she obtained was "to assure the child is physically safe and that their body and self are safe." She added that it was "important to get a history of what occurred in order to properly assess the child." She said the interview "helps guide the exam so I know what to look for." She agreed that based upon the statements made by a child and the examination of the child, she was able to prescribe further treatment, such as medication, counseling, and medical treatment.

Nurse Practitioner Haynes testified that she took the following history from A.J.:[1] A.J. was going to bed when she saw a light come on in her room. A.J. saw "her dad," who moved her and got into bed with her. He removed her pants and underwear and raped her vaginally and anally. A.J.'s father did not wear a condom, and A.J. did not bleed. The events occurred around 9:00 p.m. on August 28, 2013. On four prior occasions in 2012 and 2013, A.J.'s father opened her legs and rubbed her vagina. A.J. did not indicate that the prior incidents involved penetration. On the previous evening, A.J. first told her mother about the events.

---

[1] The State contends in its brief and its oral argument before this court that the information about the alleged offense was elicited by an open-ended question posed by Nurse Practitioner Haynes to A.J. The record merely reflects that Nurse Practitioner Haynes asked A.J. about what happened and took a statement from A.J. Nurse Practitioner Haynes was not asked whether, nor did she state, she obtained the information from A.J. through a single, open-ended question. During cross-examination about A.J.'s statements recorded in Nurse Practitioner Haynes's report, Nurse Practitioner Haynes described asking "questions," including whether the perpetrator had anything on his penis and if any bleeding occurred. Nurse Practitioner Haynes also referred to her "discussion with" A.J. regarding the approximate time A.J. had gone to bed the previous evening.

Nurse Practitioner Haynes testified that because A.J. reported a sexual assault occurring within the past seventy-two hours, "[I]t was decided between myself and law enforcement that a rape kit would be necessary to collect." Nurse Practitioner Haynes said she performed a head-to-toe examination and collected the rape kit. She agreed that she did not find physical trauma. Nurse Practitioner Haynes said she also performed a urinalysis to determine whether A.J. was pregnant and prescribed medication that provided prophylaxis for pregnancy and sexually transmitted infections. Nurse Practitioner Haynes said A.J. seemed to be reliable and gave a consistent statement but acknowledged that A.J. could have been lying, although she had no suspicion that A.J. had been untruthful.

Nurse Practitioner Haynes acknowledged that, at the time she examined A.J., she did not have the credentials to conduct a forensic interview pursuant to Tennessee Code Annotated section 24-7-123, pertaining to admission of a video recording of a child's interview regarding a sexual assault. She said, however, that she had since obtained the certification, although she did not conduct forensic interviews in her employment. When asked, "Did you tell [the victim and her mother] you work with law enforcement?" Nurse Practitioner Haynes said, "That's not really part of what I explain to the child." When asked further, "Did you do that, though?" she said, "No." She responded affirmatively when asked, "Did the child know that the purposes of this examination was [sic] for her own health benefit?" Nurse Practitioner Haynes did not recall whether a law enforcement officer had been present when A.J. arrived at the Children's Advocacy Center, but she said she collected evidence for A.J.'s rape kit and provided it to the detective who was working on A.J.'s case. Nurse Practitioner Haynes did not know how the victim and her mother were transported to the Children's Advocacy Center and said she assumed they had been instructed to go to the center by the Department of Children's Services (DCS) or law enforcement. When asked, "So it's your understanding the police directed her to you?" Nurse Practitioner Haynes responded, "Police or DCS."

The report Nurse Practitioner Haynes prepared relative to her interview and examination of A.J. was received as an exhibit. It includes the following information:

**08/29/2013 – Office Visit: Sexual Abuse Medical Examination**

. . .

**Sexual Assault Exam**

. . .

**REASON FOR REFERRAL**

**Reason for Referral:**    alleged rape

**Date of Occurrence:**    8/29/2013

**City of Occurrence:**    Chattanooga

**State of Occurrence:**    Tennessee

**Date of Exam:**    8/29/2013

. . .

Location of Care:    Children's Advocacy Center

Case Worker:    A. Haithcock, DCS Hamilton County

Referring Agency:    Chattanooga Police Department

Law Enforcement:    G. Fugh, CPD

. . .

**Patient Instructions:**

1)    The purpose of this exam is to collect evidence and document trauma, if present.

2)    The medical evaluation is not used as the only evidence to support or deny that abuse has occurred.

3)    Most importantly, it is performed to reassure you and your child that his [sic] body is okay.

4)    Medications sent to Wal-Mart include:

5)    Cefixime 400mg tablet, take one by mouth

6)      Metronidazole 2g tablet, take one by mouth

7)      Azithromycin 1g tablet, take one by mouth

8)      Plan B 1.5mg tablet, take one by mouth – if vomiting occurs within two hours, will need to call 423-778-9107 to get another dose prescribed. Please ask for Ashley O'Barr, Lillie Rucker, or Dr. Karla Garcia.

9)      Do not take the Plan B until I contact you to inform you urine pregnancy tests are negative.

10)     Recommend counseling.

11)     Recommend return visit at CAC in approximately 4 weeks; scheduled for Tuesday, September 24th at 9am.

12)     I will be in touch with Chattanooga Police Department detective today.  Please call him with any questions or concerns.

13)     Patient to call if any questions.

Elsewhere in the report, the "Requesting Physician" is listed as "Chattanooga Police Department."

The exhibit containing A.J.'s medical records included the paperwork which Nurse Practitioner Haynes testified had been completed by A.J. and A.J.'s mother.  On the line following the question, "Who referred the patient for the exam?" a handwritten response states, "Chattanooga Police."  In response to the question, "Is there a law enforcement agent (police officer/detective) involved in the case?" the box corresponding with "yes" is marked, and a handwritten response states the "name" is "Chatt. P.D." Responses elsewhere indicate A.J.'s primary care physician to be "Whitfield County," that the reason for the examination on August 29, 2013 was "physical for school," and that the "alleged event" occurred on August 28, 2013.  The person who completed the form expressed concern about "her being permanently damaged physically and scarred emotionally."

At the hearing, the prosecutor stated that sixteen-year-old A.J. did not live in Tennessee and that the State did not intend to call her as a witness at the trial.  The prosecutor acknowledged, however, that A.J. was not unavailable as a witness.  The

prosecutor argued that A.J.'s statements to Nurse Practitioner Haynes were admissible hearsay exceptions pursuant to Tennessee Rule of Evidence 803(4) because they were statements made for medical diagnosis and treatment. The defense argued that admission of the statements would violate his right to confront adverse witnesses. *See Crawford v. Washington*, 541 U.S. 36 (2004). Defense counsel asserted that after A.J. made the allegations, she later recanted by telling multiple individuals that she had fabricated the allegations. Thus, counsel argued, admission of A.J.'s statements to Nurse Practitioner Haynes without A.J.'s testimony deprived the Defendant of the opportunity to confront his accuser and to present impeachment evidence.

## Appellate Issues

In this appeal, the State contends that the trial court erred in ruling that A.J.'s statement to Nurse Practitioner Haynes would be excluded at the Defendant's trial. The State argues that the statements were made for the primary purpose of medical diagnosis and treatment and were neither testimonial nor inadmissible hearsay. The State also argues that A.J.'s statements about the alleged offense, as recorded in her medical records created at the Children's Advocacy Center, are admissible pursuant Tennessee Rule of Evidence 803(6), pertaining to the hearsay exception for business records. The State did not advance the latter theory of admissibility in the trial court. The Defendant contends that the trial court did not err in ruling that A.J.'s statements to Nurse Practitioner Haynes were inadmissible.

## Legal Principles

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is inadmissible unless it qualifies as an exception. *Id*. at 802. Tennessee Rule of Evidence 803(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment."

The Confrontation Clause provides a criminal defendant the right to confront and cross-examine witnesses. *See* U.S. Const. amends. VI, XIV; Tenn. Const. art. I, § 9; *State v. Williams*, 913 S.W.2d 462, 465 (Tenn. 1996). In *State v. McCoy*, 459 S.W.1, 13-14 (Tenn. 2014), our supreme court said that Article I, section 9 of the Tennessee Constitution placed no additional restrictions on the admission of hearsay statements beyond the limits of the federal constitution, as explained in *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Thus, the same standards apply in interpreting a defendant's

confrontation rights under the state and federal constitutions. *See State v. Hutchison*, 482 S.W.3d 893, 905) (Tenn. 2016). In analyzing whether an out-of-court statement is barred by the Confrontation Clause, inquiry begins with "whether the challenged statement is testimonial." *See id.*; *State v. Dotson*, 450 S.W.3d 1, 63 (Tenn. 2014). The Confrontation Clause has no bearing on the admission of statements which are nontestimonial hearsay. *Hutchison*, 482 S.W.3d at 905-06 (citing *Davis v. Washington*, 547 U.S. 813, 823-24 (2006)); *Dotson*, 450 S.W.3d at 63. Thus, the admissibility of a nontestimonial statement is determined by the traditional rules regarding the admission of hearsay evidence. *State v. Cannon*, 254 S.W.3d 287, 303 (Tenn. 2008); *see Davis*, 547 U.S. at 821.

A precise definition of what constitutes a testimonial statement has proven elusive. *See, e.g.*, *Williams v. Illinois*, 132 S. Ct. 2221 (2012) (proposing, in a plurality and two separate opinions, three methods for determining whether a statement is testimonial); *Dotson*; 450 S.W.3d at 68-70 (noting the difficulty of discerning a cohesive, narrow rule from the fractured opinions of the *Williams* court). Recently, our supreme court analyzed *Williams* and prescribed a framework for determining which evidence is testimonial. *See Dotson*, 450 S.W.3d at 69. In this regard, a statement is testimonial "'if its primary purpose is evidentiary and it is either a targeted accusation or sufficiently formal in character.'" *Dotson*, 450 S.W.3d at 69 (quoting *Young v. United States*, 63 A.3d 1033, 1043-44 (D.C. 2013)); *see Hutchison*, 482 S.W.3d at 910.

In determining what statements are testimonial, our supreme court has also looked to the examples provided by *Crawford*:

> Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.

*Hutchison*, 482 S.W.3d at 906 (quoting *Crawford*, 541 U.S. at 51-52).

In order for a testimonial statement to be admissible, the declarant must be unavailable to testify, and the defendant must have had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-55; *see Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). However, the Confrontation Clause is not implicated when testimonial statements are not used to show the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9. Similarly, no Confrontation Clause violation occurs if the declarant is called as a trial witness and is subject to cross-examination regarding the declarant's prior testimonial statements. *See Dotson,* 450 S.W.3d at 73; *see also Crawford*, 541 U.S. at 59, n.9; *California v. Green*, 399 U.S. 149, 162 (1970).

## Trial Court's Ruling

In its order, the trial court stated:

From the proof, lack of proof, and argument in this case, the Court gathers:

(1) that the alleged victim was twelve at the time of the forensic examination and is sixteen now;

(2) that the alleged victim and her mother did not seek diagnosis or treatment on their own;

(3) that, as part of their investigation, police referred the alleged victim for a forensic examination;

(4) that, although the forensic examiner was the first health-care provider to examine the alleged victim after her report, apparently, the alleged victim was not complaining of any physical or mental condition necessitating diagnosis or treatment apart from the reported events, at least some of which were remote in time, and there was no ongoing emergency;

(5) that the forensic examiner, who used the term "forensic" to describe her role or the examination, had a role in the police investigation, sharing what she learned, observed, or collected with police or other law enforcement agencies, presumably, with the alleged victim's or her mother's consent; and

(6) that, although the forensic examiner administered unspecified treatment, there is no evidence that the perpetrator's identity was a factor in the treatment.

From these circumstances, the Court concludes that the examination had dual purposes and that the primary purpose was testimonial.

The court noted that although some cases had discussed dissecting testimonial and non-testimonial components of a statement, such an approach was not appropriate in the present case because A.J.'s statement was not in evidence. The court found that at the time of the forensic examination, the Defendant was the target of the investigation. From its findings, the court concluded that the Confrontation Clause barred the State from presenting Nurse Practitioner Haynes's testimony about the victim's statements regarding the alleged offense.

The trial court went on to examine the applicability of Tennessee Rule of Evidence 803(4) and stated the following:

While the Court agrees with the state that Rule 803 does not condition the hearsay exceptions that it recognizes on the availability or unavailability of the declarant, the application of hearsay exceptions is subject to constitutional considerations that do depend on the availability or unavailability of a declarant. Those constraints preclude admission of the statement in issue pursuant to Rule 803(4).

## Standards of Review

A trial court's factual findings and credibility determinations relative to a hearsay issue are binding upon an appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The determination of whether the statement in question is hearsay and whether a hearsay exception applies are questions of law that are reviewed de novo. *Id*. A question of whether a defendant's right of confrontation is violated by the admission of evidence is one of law, which we review de novo. *See, e.g.*, *State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014).

## Analysis

As we have stated, the trial court found that, as a function of the law enforcement investigation, the police referred A.J. to the Children's Advocacy Center for a forensic examination, that A.J. and her mother did not seek medical treatment independently, that

no ongoing emergency existed, that Nurse Practitioner Haynes was a participant in the police investigation because she shared the information she obtained with the police, and that, although treatment was prescribed, no evidence showed that the alleged perpetrator's identity was a factor in the treatment provided. From these findings, the court concluded that the primary purpose of A.J.'s statement, as recounted in Nurse Practitioner Haynes's testimony at the hearing on the motion in limine, was testimonial.

As *Hutchison* outlines, testimonial and nontestimonial statements are distinguished by examining the primary purpose of the statement. *Id.* (relying on *Davis*, 547 U.S. at 822). In this regard, *Davis* provides:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

> *Davis,* 547 U.S. at 822; *see Hutchison*, 482 S.W.3d at 906.

Nurse Practitioner Haynes testified to her understanding that A.J. had been referred to the center by the police or DCS. Although the State argues on appeal that Nurse Practitioner Haynes's testimony was based upon an assumption regarding how A.J. was directed to the Children's Advocacy Center, the intake paperwork completed by A.J.'s mother reflects that A.J. was referred to the center by the Chattanooga Police Department.

The medical records also state that "the purpose" of the examination was "to collect evidence and document trauma, if present." The records also indicate that the medical evaluation holds potential evidentiary value relative to claimed abuse and that the examiner planned to communicate with a police detective the same day. The patient instructions included a directive to call the detective with questions or concerns.

According to the evidence presented at the hearing, A.J. received a pregnancy test and was provided with prophylaxis against pregnancy and sexually transmitted infections. Nurse Practitioner Haynes testified that her questioning A.J. about the alleged incident was necessary in order to determine the nature of the examination and the necessary treatment.

In reviewing the trial court's ruling in the present case, we are mindful of our supreme court's decision in *Cannon*, in which the victim called 9-1-1 immediately after the assault and was taken by ambulance to an emergency room, where she made statements that the she had been raped and received treatment for multiple physical injuries. *Cannon*, 254 S.W.3d at 293. The victim did not testify at the trial. The Tennessee Supreme Court deemed her statements to emergency room personnel to be nontestimonial because they "were objectively for the primary purpose of seeking medical diagnosis and treatment for injuries sustained in the attack." *Id.* at 304. The victim had also made statements to a police officer at the emergency room, and the court deemed these statements to be testimonial because they were objectively made to describe and establish a past crime and were not to enable the officer to respond to an ongoing emergency. *Id.* After the victim had been examined and treated by emergency room personnel, she made statements to a Sexual Assault Crisis Center nurse, who questioned the victim with a detective. The nurse also performed a physical examination of the victim. The court categorized the victim's statements to the nurse as testimonial because the statements were not reasonably pertinent to medical diagnosis and treatment and were, instead, made for the primary purpose of showing past events with potential relevance to a prosecution. *Id.* at 304-05.

Upon review, we conclude that the evidence does not preponderate against the trial court's finding that the primary purpose of the questioning and examination which yielded A.J.'s statement was to gather evidence of the alleged offense for possible use in a future prosecution. A.J. and her mother did not go to the Children's Advocacy Center on their own seeking medical treatment. Rather, they went there at the direction of the police. Nurse Practitioner Haynes and the police consulted while the victim was at the Children's Advocacy Center because the record reflects that the police were involved in the decision to administer a rape kit and that the police received the completed rape kit and information about the findings of the examination. The evidence does not show that A.J. presented with any physical injuries requiring immediate medical treatment. Rather, A.J. sought treatment the day after the alleged incident, which was also the day after A.J. first reported the alleged abuse. A.J.'s statements provided Nurse Practitioner Haynes with information for determining the course of the examination, the purpose of which, according to the medical records, was to gather evidence. Although the record demonstrates that the victim received prophylactic treatment to prevent pregnancy and sexually transmitted infections, that she received reassurance that her "body is okay," and that counseling was recommended, the trial court concluded that these purposes were secondary.

The trial court's findings, in turn, support its conclusion that A.J.'s statement was testimonial and barred by the Confrontation Clause. *See Davis,* 547 U.S. at 822;

*Hutchison*, 482 S.W.3d at 906.  As we have noted, the State does not intend to call A.J. as a trial witness but acknowledges that she is not "unavailable" as a witness.  Testimonial hearsay is inadmissible unless the declarant is called as a witness and the defendant is afforded the opportunity to cross-examine the declarant regarding the prior statement. *See Dotson,* 450 S.W.3d at 73; *see also Crawford*, 541 U.S. at 59, n.9; *Green*, 399 U.S. at 162; *State v. Franklin*, 308 S.W.3d 799, 809-10 (Tenn. 2010) (stating that the admissibility of testimonial hearsay is subject to Confrontation Clause scrutiny, whereas the admissibility of nontestimonial hearsay is governed by the Tennessee Rules of Evidence).  Given the testimonial nature of the evidence and the lack of a showing of A.J.'s unavailability, the trial court did not err in determining that the Confrontation Clause precluded admission of the evidence, and that, as a result, the hearsay exception provided by Tennessee Rule of Evidence 803(4) is unavailable as a means for admitting this evidence.

The State also argues that the evidence of A.J.'s statement is admissible via her medical records pursuant to Rule of Evidence 803(6), the hearsay exception for records of regularly conducted activity.  This theory was advanced in the State's application to this court for an interlocutory appeal but was not advanced in the trial court at the hearing on the motion in limine.  Rule 803(6) permits evidence of "opinions and diagnoses," provided the foundational requirements are met.  *See* Tenn. R. Evid. 803(6).  To the extent that the records document A.J.'s statements, an issue of "hearsay within hearsay" exists, and the evidence is admissible provided each component of the combined statements fits within an exception to the rule against hearsay.  *See* Tenn. R. Evid. 805. The concern in this appeal is A.J.'s statements about the alleged offense.  To the extent that these statements are documented in the medical records, the trial court found that the primary purpose of these statements was "to establish or prove past events potentially relevant to later criminal prosecution" and that, therefore, they were testimonial.  *See Davis,* 547 U.S. at 822; *Hutchison*, 482 S.W.3d at 906.  Thus, it is of no consequence whether the evidentiary source of information is Nurse Practitioner Haynes's testimony or A.J.'s medical records.  In the absence of a showing that A.J. is unavailable as a trial witness and that she was subjected to cross-examination, the Confrontation Clause bars admission of her statements to Nurse Practitioner Haynes via the medical records pursuant to Rule 803(6).  *See Dotson,* 450 S.W.3d at 73; *see also Crawford*, 541 U.S. at 59, n.9; *Green*, 399 U.S. at 162.

In reaching this conclusion, we have considered the State's citation to *State v. Howard*, 504 S.W.3d 260, 277-80 (Tenn. 2016), a case involving the admission of records from the Hamilton County Children's Advocacy Center pursuant to Tennessee Rule of Evidence 803(6).  The supreme court considered the issue of "hearsay within hearsay" relative to the victims' statements about the offenses, as documented in the

records. The trial court determined, based upon the facts presented at an evidentiary hearing, that the victims' statements had been made for the purpose of medical diagnosis and treatment, and the supreme court determined that the record supported the trial court's factual findings. *See Howard*, 504 S.W.3d at 280. Significantly, however, the supreme court noted that no Confrontation Clause issue existed because the victims testified at the trial and were subject to cross-examination about their statements as documented in the records. *Id.* Thus, *Howard* is inapposite to the present case, in which the Confrontation Clause issue is paramount because the State does not intend to call A.J. as a witness.

We have also considered *State v. Dean*, 76 S.W.3d 352, 365 (Tenn. Crim. App. 2001), in which this court rejected the defendant's claim that the trial court had improperly admitted records from a rape victim's emergency room examination by a nurse employed by a sexual assault center, pursuant to Tennessee Rule of Evidence 803(6). The *Dean* defendant raised two issues relative to the admission of the evidence: (1) whether the nurse qualified as a "keeper" of the records and (2) whether the records were prepared for the purpose of litigation. *Dean*, 76 S.W.3d at 365. Significantly, the defendant did not raise a challenge to any statements made by the victim that were documented in the records, nor did he raise a Confrontation Clause challenge relative to the records. *See id.* The victim in *Dean* testified at the trial. *Id.* at 357-58. Like *Howard*, *Dean* is not instructive because no Confrontation Clause issue existed.

Finally, we address the alternative theory advanced by the State in its oral argument in this court that the substance of A.J.'s statement about the alleged assault, but not her identification of the alleged perpetrator, is admissible. We are unpersuaded. The trial court considered the hearing evidence and determined that A.J.'s statements to Nurse Practitioner Haynes about the alleged assault were made in circumstances which made them testimonial in that they tended "to establish or prove past events potentially relevant to later criminal prosecution." *See Davis*, 547 U.S. at 822; *Hutchison*, 482 S.W.3d at 906. Excising A.J.'s identification of the alleged perpetrator does not change the character of her statements about the events which comprised the alleged offense.

In consideration of the foregoing and the record as a whole, the order of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE