# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 3, 2021 Session

## STATE OF TENNESSEE v. CLEOTRIS RUBEN

**Appeal from the Criminal Court for Shelby County**
**Nos. C1709290, 15-04728  James M. Lammey, Judge**

_____

### No. W2020-01498-CCA-R3-CD
_____

The Defendant, Cleotris Ruben, entered guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to one count of theft of property valued more than $1,000 but less than $2,500, a Class E felony, and one count of theft of property valued $1,000 or less, a Class A misdemeanor. After entry of the pleas but prior to sentencing, the Defendant discovered that, contrary to what he had been told by the two attorneys representing him, he was not eligible for judicial diversion. The Defendant moved to withdraw his guilty pleas, and the trial court denied the motion. On appeal, this court concluded that counsel had a conflict of interest and reversed the decision, remanding for appointment of new counsel. The trial court appointed new counsel, held a hearing, and again denied the Defendant's motion to withdraw his pleas, and the Defendant appeals. We conclude that the trial court abused its discretion in denying the motion, and we reverse and remand the case for entry of an order permitting withdrawal of the pleas and for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

W. Price Rudolph, Memphis, Tennessee, for the appellant, Cleotris Ruben.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jamie Kidd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

In September 2015, the Defendant was indicted for theft of property valued between $10,000 and $60,000, a Class C felony, alleged to have occurred between December 2012 and January 2015. The Defendant hired private counsel to represent him. In November 2017, while this charge was pending, the State also charged the Defendant by criminal information with a separate count of theft of property valued between $1,000 and $2,500, a Class E felony, alleged to have occurred in March 2017. The Defendant was represented by appointed counsel on the Class E felony theft charge.

According to the State's summary of the proof at the plea hearing, the factual basis of the Class C felony theft charge was that the Defendant, over the course of more than two years, had negotiated fourteen properties for Ms. Jill Holmes and Mr. Gregory Holmes, who gave him $19,100 to increase their chances of getting a contract. Because none of the contracts were successfully negotiated, the victims asked for the return of their funds. The Defendant agreed to return approximately $14,000 but did not do so. The factual basis of the Class E felony charge was that Ms. Tammy Cowans gave the Defendant $1,700 to act as her realtor but subsequently requested the return of her money when she discovered that the homes she was attempting to purchase were already occupied and that the Defendant's realtor's license was revoked.

On January 29, 2019, the date that trial was scheduled for the Class C felony theft, the Defendant entered best interest guilty pleas. On the charged Class C felony theft, the Defendant pled guilty to the lesser included offense of theft of property valued more than $1,000 but less than $2,500, a Class E felony, and on the charged Class E felony theft, the Defendant pled guilty to the lesser included offense of theft of property valued $1,000 or less, a Class A misdemeanor. Private counsel stated to the court that the Defendant wished to enter best interest guilty pleas and requested a delay in sentencing to "give[] us time to go get his [Tennessee Bureau of Investigation ("TBI")] certification" regarding diversion eligibility. The trial court asked if the Defendant was diversion eligible, and appointed counsel responded, "He has been." The prosecutor noted that the State did not oppose diversion if the Defendant proved eligible and that, as part of the agreement, "if he does come back eligible for diversion," it was recommending a six-year supervision period for the Class E felony theft. The State recommended a concurrent probationary sentence of eleven months and twenty-nine days for the misdemeanor theft conviction.

The trial court told the Defendant that diversion was recommended "if you are eligible and I assume, you're the only one who could tell us." The judge asked the Defendant, "Do you have anything in your background that you think would stop this?"

The Defendant responded, "No, sir." Asked if he had ever entered a guilty plea, he recalled that he had pled guilty to driving on a suspended license twenty years earlier. The court noted that the jury was ready to try the case, and the Defendant agreed he was waiving his right to a jury trial. The Defendant agreed with the court's statement that by entering the pleas, the Defendant was stating it was in his best interest to plead guilty and that he wanted "to accept the State's offer of, basically, up front diversion."

On February 20, 2019, private and appointed counsel requested a postponement of sentencing and indicated an intention to file motions to withdraw the guilty pleas due to the discovery that the Defendant was not eligible for diversion. On February 25, 2019, appointed counsel filed a motion to withdraw the Defendant's guilty plea in the indicted Class E felony theft, alleging that the Defendant entered guilty pleas believing himself to be eligible for diversion and having been advised that he appeared to be eligible. Appointed counsel stated that the TBI subsequently indicated that the Defendant was not eligible for diversion, that it took two weeks to obtain the pertinent records from the archives to confirm the TBI report, and that the Defendant would not have pled guilty had he known he was not eligible for diversion. Private counsel filed a similar motion on February 27, 2019.

The trial court held a hearing, during which the Defendant was represented by the same attorneys and during which counsel stated that they had advised the Defendant he was eligible for diversion and that they subsequently discovered he was not eligible. "Counsel maintained that the Defendant 'was under the 100 percent full faith that he was going to be diversion eligible'" and argued that relief should be granted because "'but for the fact that he's – was diversion eligible he would not have entered a plea.'" *State v. Cleotris Ruben*, No. W2019-00507-CCA-R3-CD, 2020 WL 864163, at *3 (Tenn. Crim. App. Feb. 19, 2020), *no perm. app. filed*. Private counsel noted he "would have to probably advise [the Defendant] … to file post-conviction relief against me for having – telling him that he appeared to be diversion eligible" and for advising him to enter a plea. The State argued against granting the motion, noting the delay in trying the case and stating that trial had been postponed once at the State's request, when the State was awaiting the results of a subpoena, and twice at the Defendant's request. The prosecutor noted that delay in general made it difficult to get witnesses and evidence together and that "[i]t was difficult to get all those people together." The trial court denied the motions to withdraw the pleas and sentenced the Defendant to six years of probation for the Class E felony theft and a concurrent eleven months and twenty-nine days of probation for the Class A misdemeanor, and it ordered him to pay restitution. The cases were consolidated for appeal, and this court reversed the judgment of the trial court and remanded for appointment of new counsel and a new hearing on the Defendant's motions because this court concluded that both appointed and private counsel "had a clear conflict

of interest" and that they were necessary witnesses to establishing the factual basis of the Defendant's motions to withdraw his pleas. *Id.* at *4.

On remand, new counsel was appointed to represent the Defendant, and the Defendant filed another motion to withdraw his guilty pleas. At the hearing, appointed counsel testified that she represented the Defendant on the indicted offense of Class E felony theft, that she "inherited" the case approximately three weeks before the plea date from another attorney who transferred to a different unit, and that she met with the Defendant for the first time on the day prior to the plea. Appointed counsel testified that private counsel represented the Defendant on the indicted Class C felony theft that was set for trial and that he had negotiated a global plea with the prosecutor to resolve both charges. Appointed counsel testified that the Defendant wanted to be placed on diversion and that, based on her conversations with private counsel and the Defendant, she believed he was eligible. She conducted a search through the "Odyssey" system, and it appeared the Defendant was eligible for diversion. Appointed counsel testified that she told the Defendant she believed he was eligible for diversion. Subsequently to the pleas, she obtained a TBI report and discovered he was not eligible for diversion. On February 6, 2019, she spoke with the Defendant regarding the results of the TBI certificate. The Defendant told her that "he was not familiar with the case that was coming up," so she took further steps to clarify his eligibility. After having the "court jacket" sent, she discovered that he had been placed on seven months of pretrial diversion in 1984.

Private counsel had represented the Defendant on the indicted Class C felony theft since 2014 or 2015. He testified that he initially checked diversion eligibility through "JSSI" and that it appeared that the Defendant was eligible. In his investigation, he discovered a 1984 petit larceny case which "showed to be held to state" but which had never been indicted. Private counsel called the clerk's office and was told that the warrant had been dismissed, and he concluded the Defendant was eligible for diversion. Asked if he advised the Defendant that the Defendant was diversion eligible, private counsel responded, "Absolutely. I mean, I advised him he appeared to be diversion eligible, yes." Private counsel noted that his advice was based in part on the Defendant's statement that he had never pled guilty to anything "which turned out to be true, because he went on pretrial diversion." He stated that no application was filed for the diversion certificate until after the Defendant pled guilty. When appointed counsel informed private counsel that the TBI report reflected the Defendant was not eligible, private counsel spoke to the Defendant, who asked about his options because "he certainly didn't want this…on his record." Private counsel stated that he believed, based on his past experience, that the TBI report might have been mistaken, and he told the Defendant he wanted time to investigate. After retrieving the file from archives, private counsel advised the Defendant he was not eligible for diversion, and the Defendant "immediately" asked to withdraw the guilty pleas.

On cross-examination, private counsel testified that the case had been set for trial three times, including one time when the Defendant changed his mind about having a bench trial. Private counsel recalled that he had initially negotiated with the State to dismiss the case upon the payment of a certain amount of restitution and that no restitution was paid. He agreed that the case would have gone to trial on the date of the plea hearing if the Defendant had not pled guilty. Private counsel stated that he was not familiar with how pretrial diversion was handled in 1984 but that he was able to obtain a copy of the pretrial diversion paperwork signed by the Defendant. The case was never indicted, and the Defendant never pled guilty. Private counsel said that, while he did not guarantee the Defendant that the court would grant diversion, he had been "adamant that [the Defendant] appeared to be diversion eligible." Private counsel testified that it required "a good bit of coaxing" to convince the Defendant to plead guilty, that the Defendant relied heavily on his advice, and that the Defendant did not want to plead guilty "because he felt like he had not done anything wrong." Private counsel felt that the pleas were in the Defendant's best interest because the subsequent Class E felony charge was "more risky" and the plea agreement resolved both cases. Private counsel stated that, in his opinion, the Defendant had a meritorious defense for trial. He elaborated that the Defendant showed the victims over twenty houses a year for a period of two years, that the victims had been pre-approved for loans and signed contracts on six houses, that the victims never closed on a house, and that a liquidated damages clause entitled the Defendant to a percentage of any house that the victims entered into a contract on and did not purchase. The Defendant lost his real estate license after the Class C felony charges were filed.

The trial court noted that there had been ten disposition dates, and private counsel agreed that the case was continued to give the Defendant a chance to pay restitution so that the charges could be dismissed. Private counsel testified that, during the pendency of the case, he had negotiated agreements with the State for the payment of varying amounts in exchange for dismissal. He agreed that restitution was never paid.

The Defendant testified that he entered *Alford* pleas and believed he would have the chance to expunge the convictions after paying restitution. He said that he was "hoping" to have the opportunity to remove the convictions from his record and that his attorney explained that he would have to complete probation successfully. He testified that private counsel advised him he would have the opportunity to remove the convictions from his record after completing probation. He stated that he believed that "a prior TBI had been read" by private counsel and had indicated his record was "clean." The Defendant said that he "just relied on my counsel" and that he was "100 percent" certain he would get diversion. The Defendant stated he would not have agreed to enter the pleas if he had known he was not eligible for diversion. He testified he believed he

was maintaining his innocence by entering the *Alford* plea and that he believed he had legitimately earned the money at issue in the Class C felony charge.

The Defendant testified that he had previously pled guilty to a driving offense involving his license around 1994. He recalled that the petit larceny case concerned a $10 quart of oil which he had put in his car before leaving money on the counter. He stated he was not represented by an attorney on the charge and was told by the district attorney that he was not pleading guilty and that it would be dismissed from his record.

On cross-examination, the Defendant recalled that one of the trial dates for the charged Class C felony theft was postponed due to his treatment for prostate cancer. He agreed that, if he had not entered guilty pleas, the case would have gone to trial in January 2019. He agreed that at one point, he entered into an agreement to repay $12,000 to the victims of the charged Class C felony theft.

The Defendant acknowledged that he stated at the plea hearing that he did not know of anything in his background that would affect diversion eligibility. He explained that, because he had never pled guilty to the petit larceny, he did not think it would affect his eligibility, and he noted that he brought his driving conviction to the court's attention at the time. He agreed that he was arrested for the petit larceny. He reiterated that both his attorneys told him he was eligible for diversion.

The trial court questioned the Defendant regarding whether he had any other prior arrests, and the Defendant stated he did not. The trial court then asked if the Defendant recalled being arrested for driving under the influence of an intoxicant in 1991, and the Defendant acknowledged he had been arrested but stated the charge was dismissed. The court noted that the theft cases were continued to allow the Defendant a chance to pay restitution in exchange for dismissal at least once. The Defendant explained his failure to pay by noting that it was difficult for him to earn money after his real estate license was suspended. The prosecutor, during argument, stated that the Defendant "did always maintain his innocence" but noted the numerous delays and argued that the Defendant actions indicated a reluctance to go to trial.

The trial court found that the motion to set aside the guilty pleas was "timely filed," within thirty days of the entry of the pleas and that the time elapsed "wasn't that long." The court found that the Defendant was thirty-four years old and was an adult when he went through pretrial diversion. The trial court weighed the circumstances underlying the guilty pleas heavily against the Defendant. The trial court observed that the case had been continued "many times," including ten disposition dates. The court noted that it would not have granted a continuance on the plea date because of the numerous prior delays. The trial court found that the victims had been burdened by the

repeated delays and the Defendant's failure to pay the agreed-upon restitution, stating that they had "been going through pure hell…since…2014." Regarding the Defendant's nature and background and prior experience with the criminal justice system, the trial court found that the Defendant did not inform the court of the dismissed DUI case or the petit larceny, and the court stated it did not credit the Defendant's statement that he did not recall being arrested for DUI. The trial court found that allowing the withdrawal of the pleas would prejudice the government and be a burden on the victims. Concluding that there was no fair and just reason to set aside the plea, the trial court denied the motion. The Defendant appeals.

## ANALYSIS

On appeal, the Defendant asserts that the trial court reached an illogical conclusion in weighing the factors relevant to withdrawal and that it based its decision on a clearly erroneous assessment of the evidence when it relied on prejudice to the State without an evidentiary basis. The State responds that the trial court did not abuse its discretion in denying the motion to withdraw the guilty pleas. We conclude that the trial court erred in determining that there was no fair and just reason for the withdrawal of the pleas.

A trial court's decision regarding a defendant's motion to withdraw a plea is reviewed for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Crowe*, 168 S.W.3d at 740 (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). A trial court also abuses its discretion "when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Phelps*, 329 S.W.3d at 443 (citing *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)). "This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue." *Id.* (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A defendant who has entered a guilty plea does not have a right to unilaterally withdraw the plea. *Id.* at 444. However, Tennessee Rule of Criminal Procedure 32(f)(1) provides that "[b]efore sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason." The Tennessee Supreme Court has concluded that, in the absence of a definition of "fair and just" in the Rules of Criminal Procedure, trial courts should use "the federal courts' non-exclusive multi-factor approach" in determining whether to permit a defendant to withdraw a plea. *Id.* at 447. Those factors include:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)).[1] "[N]o single factor is dispositive," and "the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* (citing *Haygood*, 549 F.3d at 1052). The list of factors is not exclusive, and "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47 (citing *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)). The Defendant bears the burden of establishing grounds for withdrawing his plea. *Id.* at 444.

"[T]he purpose of the 'any fair and just reason' standard 'is to allow a hastily entered plea made with *unsure heart and confused mind* to be undone.'" *Id.* at 448 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)) (emphasis in *Phelps*). This standard reflects that "'[b]efore sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury.'" *Crowe*, 168 S.W.3d at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). Thus, where the balance of the factors weighs in the defendant's favor, the trial court should permit a defendant to withdraw a plea "even if the defendant's reasons could be characterized as a 'change of heart.'" *Phelps*, 329 S.W.3d at 448. "'[T]he trial judge should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial.'" *Id.* at 443 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)). However, "a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose." *Id.* at 448.

---

[1] We note that the *Phelps* court also identified a similar five-factor test cited to by the State in this case. *Phelps*, 329 S.W.3d at 447 (citing *State v. Maxwell*, No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8-9 (Tenn. Crim. App. Oct. 27, 2000)). As the *Phelps* court explained, the courts utilizing the seven-factor test separated the fourth factor from the five-factor test "into two separate factors, and added as a specific factor the defendant's prior experience with the criminal justice system." *Id.* at 447 n.11. "[T]here is no substantive difference between the lists of factors" in the two tests. *Id.*

In this case, the parties presented arguments regarding the *Phelps* factors at the motion hearing. However, the trial court did not address every factor in *Phelps* or making findings of fact relevant to each factor. Neither did the trial court indicate the weight it assigned to the factors. The failure to conduct the relevant analysis on the record is an abuse of discretion. *Id.* at 443 (citing *Lewis*, 235 S.W.3d at 141). The record contains evidence sufficient to allow review, and accordingly, we will analyze the relevant factors. *See id.* at 448-51 (conducting its own analysis of the factors); *State v. David Powell*, No. W2015-00366-CCA-R3-CD, 2015 WL 7282747, at *7 (Tenn. Crim. App. Nov. 18, 2015) (because the trial court did not apply each factor, the appellate court conducted its own analysis after concluding the record was sufficient to do so); *State v. Kevin Glenn Tipton*, No. E2012-00038-CCA-R3-CD, 2013 WL 1619430, at *11 (Tenn. Crim. App. Apr. 13, 2013) (the appellate court conducted an analysis of the factors).

The trial court here found that the motion was "timely filed" and that the time elapsed "wasn't that long." The State concedes that the motion "should be considered timely." The evidence at the hearing indicated that the Defendant's attorneys first became aware that he might not be eligible for diversion through the TBI report but that they believed there was some chance the report was mistaken and told the Defendant they needed additional time to confirm his eligibility, including time to retrieve the "court jacket." Private counsel testified that the Defendant "immediately" requested to withdraw his pleas once his attorneys confirmed that he was indeed ineligible for diversion. Twenty-two days after the entry of the plea, the Defendant's attorneys alerted the trial court that they would file motions to withdraw his pleas, and the motions were filed shortly thereafter. This factor is favorable to the Defendant because the record reflects very little delay after the Defendant's attorneys confirmed that he was not eligible for diversion. *Compare State v. Mitchell Nathaniel Scott*, No. M2013-01169-CCA-R3-CD, 2014 WL 1669964, at *5 (Tenn. Crim. App. Apr. 25, 2014) (concluding that the factor was neutral when approximately one month passed after the entry of the pleas but the defendant's desire to withdraw the pleas was not prompted by any new discovery); *State v. Marcus E. Robinson*, No. M2005-00670-CCA-R3-CD, 2006 WL 1097456, at *3, *5 n.5 (Tenn. Crim. App. Apr. 5, 2006) (same).

Regarding the existence of a valid reason for failing to withdraw the plea earlier, the record establishes that the Defendant believed he was eligible for diversion and that he immediately sought to withdraw his pleas when he learned he was not. Appointed counsel testified that she conducted research on the Defendant's criminal background, including the petit larceny charge, and that she told the Defendant she believed he was eligible for diversion. Private counsel investigated the Defendant's criminal history using a different system, and he also concluded the Defendant was eligible for diversion. Private counsel discovered the petit larceny charge and contacted the clerk's office regarding the charge, and he subsequently informed the Defendant that he believed the

Defendant was diversion eligible. Neither counsel filed a request from the TBI to determine the Defendant's eligibility prior to the Defendant's entering the pleas. Private counsel testified that the Defendant did not want a felony on his record and asked to withdraw his pleas immediately when he discovered he was not diversion eligible. The Defendant confirmed that he "just relied on my counsel" and that he was "100 percent" certain he was eligible for diversion. The Defendant testified that he was under the impression that "a prior TBI had been read" by private counsel and had indicated his record was "clean." He testified that private counsel advised him he would have the opportunity to remove the convictions from his record after completing probation. The Defendant stated he would not have agreed to enter the pleas if he had known he was not eligible for diversion.

The trial court noted at the hearing on the motion to withdraw that when the Defendant was asked if anything in his background would "stop this," he stated, "No, sir." The Defendant explained that he never pled guilty to the petit larceny and therefore did not think it could affect his eligibly. The record supports the court's finding that the Defendant was thirty-four years old and was an adult when he went through pretrial diversion. Nevertheless, it is not surprising that the Defendant might not have had a nuanced understanding of whether the petit larceny charge, which was concluded in 1984, under a system that the court referred to as a "history lesson," would affect his eligibility for diversion thirty-six years later. The record established that the Defendant's two attorneys both believed he was diversion eligible despite having investigated the petit larceny matter at issue. Aware of the petit larceny charge, both attorneys advised him that he was eligible for diversion. Private counsel testified that the Defendant relied heavily on this advice and "immediately" sought to withdraw his pleas when he discovered he was not eligible for diversion. The Defendant testified he would not have pled guilty had he known he was not eligible for diversion. Accordingly, we conclude that this factor weighs in the Defendant's favor.

The trial court did not make an explicit finding regarding whether the Defendant asserted or maintained his innocence. The record reflects that Defendant entered pleas pursuant to *Alford*. The Defendant testified that he believed he was maintaining his innocence by entering pleas pursuant to *Alford* and that he believed he had legitimately earned the money at issue. Private counsel also testified that he believed the Defendant had a meritorious defense to the charge, that the Defendant did not want to plead guilty "because he felt like he had not done anything wrong," and that he had to "coax[]" the Defendant into entering guilty pleas. The State conceded at the hearing that the Defendant "did always maintain his innocence."[2] Accordingly, this factor weighs in

---

[2] The State on appeal contests this factor, arguing that any admission that the Defendant kept the funds equates to an admission of guilt of the offenses. *Compare* T.C.A. § 39-14-103 (defining the

favor of the Defendant. *See Phelps*, 329 S.W.3d at 446 (noting that one of the "most important" of the guidelines used by the federal courts was whether the defendant had asserted legal innocence).

The trial court weighed the circumstances underlying the entry of the pleas heavily against the Defendant. In this determination, the trial court noted the numerous delays that had occurred prior to the plea hearing but did not consider the Defendant's reliance on his attorneys' advice that he was eligible for diversion. The trial court noted that the case had been set for disposition ten times, that it had been set for trial three times, and that some of the disposition dates were delayed with the intent of allowing the Defendant to pay restitution in exchange for dismissal of the charges but that the Defendant never paid any restitution. During cross-examination, the Defendant agreed with the prosecutor that trial was delayed once because he was undergoing treatment for cancer. The prosecutor noted during a motion hearing prior to the first appeal that the State had requested one continuance of a scheduled trial date to subpoena records. Accordingly, the record shows that at least some of the delay was not due to any tactic on the part of the Defendant but occurred at the State's request and due to the Defendant's cancer treatments. The court found that the State was ready to proceed to trial when the Defendant pled guilty and that the court would not have granted any further continuances. The Defendant was indicted in September 2015 and entered the pleas in January of 2019. While the trial court found a pattern of delay that weighed against the Defendant, the court did not find that the Defendant was intentionally withdrawing his pleas for any improper purpose or to pervert the judicial process. *See Phelps*, 329 S.W.3d at 448. The duration of the pendency of the case weighs against the Defendant.

However, the circumstances surrounding the entry of the pleas included not only the delay but also the Defendant's reliance on his attorneys' advice that he appeared eligible for diversion. *See id.* at 450-51 (weighing this factor in the defendant's favor when the defendant repeatedly expressed confusion about the nature of the offense at the plea hearing); *David Powell*, 2015 WL 7282747, at *8 (considering that the defendant was advised by counsel and that he did not express any confusion regarding the terms of the plea as part of the circumstances of the plea). Private counsel testified that the Defendant was reluctant to enter a plea and that the Defendant felt he was contractually entitled to the money at issue in the C felony charge. Private counsel likewise believed the Defendant had a meritorious defense. Both of the Defendant's attorneys testified that they believed he was eligible for diversion after having investigated his criminal history, including in particular the petit larceny, and that they told him they believed he was eligible. At the plea hearing, the trial court asked if the Defendant was diversion eligible,

---

elements of theft). We conclude this argument is waived. *See State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016) (noting that the parties may not advocate a new position on appeal).

- 11 -

and appointed counsel responded, "He has been." Although both the State and the trial court used conditional language regarding the Defendant's eligibility for diversion, the trial court also asked the Defendant to confirm that he was accepting "the State's offer of, basically, up front diversion." Asked if he advised the Defendant that the Defendant was diversion eligible, private counsel responded, "Absolutely. I mean, I advised him he appeared to be diversion eligible, yes." Private counsel had been "adamant that [the Defendant] appeared to be diversion eligible" in his conversations with the Defendant. Private counsel testified that the Defendant relied on this advice in deciding to enter the guilty pleas and that it required "a good bit of coaxing" to convince the Defendant to plead guilty. He further stated that the Defendant "certainly didn't want this…on his record." During a hearing prior to the first appeal, private counsel noted he "would have to probably advise [the Defendant] … to file post-conviction relief against me for having – telling him that he appeared to be diversion eligible" and advising him to enter a plea. The trial court erred in considering only the delay in relation to this factor. Considering the circumstances surrounding the entry of the pleas as a whole, this factor weighs heavily in favor of the Defendant.

The trial court analyzed the Defendant's nature and background only in relation to his criminal history. In analyzing the Defendant's nature and background, this court also looks to "'[a] defendant's intelligence, sophistication, and understanding of the plea.'" *Id.* at 451 (quoting *United States v. Jose Medina*, No. 3:08-CR-48, 2010 WL 3338567, at *11 (E.D. Tenn. Aug. 23, 2010)). Here, the Defendant manifested an understanding that he would be entering best interest pleas, that the pleas would allow him to maintain his innocence, and that at the conclusion of the probationary period, the convictions could be expunged. The Defendant was close to seventy years old and was a licensed realtor prior to the offenses at issue. It is undisputed that both the Defendant and his attorneys believed he was diversion eligible and that the Defendant was reluctant to enter pleas and mar his criminal record. Accordingly, it appears that the Defendant's nature and background allowed him to understand the nature of the pleas and to rely on his counsel's advice that they believed he was diversion eligible. This factor weighs slightly in the Defendant's favor.

Regarding the Defendant's prior experience with the criminal justice system, the trial court found that the Defendant did not inform the court of the dismissed DUI case or the petit larceny, and the court did not credit the Defendant's statement that he did not recall being arrested for DUI. The Defendant stated at the plea hearing and at the motion hearing that he had pled guilty to driving on a suspended license in the 1990s. He asserted that he did not mention the DUI arrest and the petit larceny charge because he had not pled guilty to them. The Defendant had gone through pretrial diversion for a 1984 petit larceny, was arrested for DUI in 1991, and pled guilty to driving on a suspended license in the 1990s. Accordingly, he had relatively minor contact with the

criminal justice system, and the contact was remote in time from the offenses at issue. This factor is neutral.

In *Phelps*, the court, having concluded that the record supported "at least some of the factors which may establish a fair and just reason for allowing the withdrawal of a guilty plea," went on to analyze the potential prejudice. *Id.* at 451. Here, too, some of the factors may establish a fair and just reason for allowing the withdrawal of the plea. In evaluating potential prejudice to the State, the trial court found that the case had been delayed numerous times and that this resulted in prejudice. The Defendant urges us to conclude that the record does not support this finding because the State did not introduce proof regarding prejudice. While some prejudice may be inherent in delay, *see, e.g.*, *State v. Simmons*, 54 S.W.3d 755, 759 (Tenn. 2001) (noting that for a speedy trial violation, the presumption that delay has prejudiced the accused intensified with time), we agree that the State did not introduce proof regarding prejudice. During the hearing, defense counsel noted that the evidence was primarily documentary evidence, such as contracts and receipts. The prosecutor had stated during one hearing that one continuance was due to an outstanding subpoena for documents. During the hearing on the motion to withdraw the pleas, the prosecutor, urging the court to deny the motion, noted that the State's anticipated proof included the victims and other witnesses and that "memor[ies] change." The Defendant is correct that there was no proof introduced to support the trial court's finding that the victims suffered "tremendous[]" prejudice," and this determination is not supported by the record. We conclude that, given the duration of the pendency of the case, this factor is neutral or weighs slightly in favor of the State. *See Phelps*, 329 S.W.3d at 451 (concluding the factor was neutral when no evidence was included regarding prejudice and the State's evidence included documents that remained available).

The Tennessee Supreme Court has stressed that a trial judge "'should always exercise … discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial.'" *Id.* at 443 (quoting *Henning*, 201 S.W.2d at 671). Withdrawal should be permitted "even if the defendant's reasons could be characterized as a 'change of heart.'" *Id.* at 448. Here, the testimony of all parties was in agreement that diversion eligibility was a key factor in the Defendant's decision to plead guilty, that the Defendant's two attorneys both advised him that they believed he was diversion eligible, even after investigating the disqualifying charge, and that the Defendant immediately asked to withdraw his pleas when he discovered that he was not eligible for diversion. The relevance of each of the *Phelps* factors "varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* at 446. Most relevant here is that the Defendant reasonably relied on his attorneys' representations regarding diversion and that these representations were material to his decision to plead guilty. The Defendant has accordingly established a fair and just reason

- 13 -

to permit withdrawal of his pleas.  Furthermore, the State has not pointed to any particular prejudice stemming from delay.  Therefore, we reverse the trial court's denial of the motion and remand for entry of an order permitting the Defendant to withdraw his pleas.  *See United States v. Anthony Cornelius Baylis*, No. 3:08-CR-147, 2009 WL 2431425, at *2 (E.D. Tenn. Aug. 7, 2009) (allowing withdrawal when counsel's advice "was  erroneous and materially influenced the defendant's decision").

## CONCLUSION

Based on the foregoing, we reverse the trial court's denial of the motion to withdraw the Defendant's guilty pleas and remand for further proceedings.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE