IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2024

**STATE OF TENNESSEE v. RUSSELL LYNN ONKS**

**Appeal from the Circuit Court for Sullivan County**
**No. S71149   William K. Rogers, Judge**

_____

**No. E2023-01656-CCA-R3-CD**

_____

Defendant, Russell Lynn Onks, was convicted by a Sullivan County jury of four counts of violation of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004.  After a hearing, the trial court imposed an effective sentence of two years, suspended to probation after service of ninety days of incarceration. Defendant appeals, arguing that the evidence was insufficient to support a finding that he established a primary residence, secondary residence, or a physical presence within Sullivan County to support counts one and two.  Upon review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Mitchell Raines, Assistant Public Defender – Appellate Division, Franklin, Tennessee (on appeal), and Gene Scott, Johnson City, Tennessee (at trial), for the appellant, Russell Lynn Onks.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily Hutchins and Lauren Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On August 7, 2019, Defendant was indicted by a Sullivan County grand jury for four counts of violating the Tennessee Sexual and Violent Sexual Offender Registration,

Verification and Tracking Act of 2004 ("SORA") by establishing a residence within 1,000 feet of a school (count one); failing to timely report a change in his primary residence, secondary residence, or physical presence (count two); failing to disclose a social media account (count three); and failing to report a new vehicle (count four). At trial, the State read into the record a written stipulation that Defendant "had a conviction for a sexual offense before the offense date alleged in this case" that "required [him] to register as a sex offender."

On February 24, 2018, Kingsport Police Department ("KPD") Officer Justin Magdzuik and Field Training Officer ("FTO") Brandon Ferrell[1] responded to 2509 Fort Henry Drive ("Fort Henry Drive residence") regarding a report of a stolen vehicle. Officer Magdzuik affirmed that the Fort Henry Drive residence was in Kingsport, Tennessee. Both officers identified Defendant in court as the complainant, and FTO Ferrell identified the vehicle reported as stolen as a 2007 Chrysler PT Cruiser. The officers created a report but did not start an investigation because Defendant could not provide documentation proving his ownership of the vehicle. When Officer Magdzuik asked Defendant where he lived, Defendant "turned to the side, put his hands to the side, and [said] 'Right here.'" On cross-examination, Officer Magdzuik clarified that Defendant was "standing in front of" the Fort Henry Drive residence. However, he agreed that he did not see Defendant enter or exit the Fort Henry Drive residence. Two days later, on February 26, 2018, Defendant called to report that he had located the vehicle, and FTO Ferrell responded to the location of the vehicle. At trial, FTO Ferrell identified photographs of the vehicle's "temporary tag," which was affixed to the windshield of the vehicle and listed Defendant as the owner of the vehicle. FTO Ferrell created a new report regarding the recovered vehicle.

KPD Detective Kevin Ewing was assigned to investigate the theft of Defendant's vehicle. He obtained the registration information for the vehicle, which listed Defendant as the owner. Defendant's address on the Title Pledge Agreement and Disclosure/Receipt was listed as 2112 Swannaoa Avenue ("Swannaoa Avenue residence"). On March 1, 2018, Detective Ewing interviewed Defendant at the Swannaoa Avenue residence in the "late morning." He affirmed that the Swannaoa Avenue residence was in Sullivan County. Detective Ewing developed a suspect, who was ultimately convicted for the theft of Defendant's vehicle; the judgment of conviction was admitted into evidence and showed Defendant as the victim.

About one month after the March interview, Detective Ewing returned to the Swannaoa Avenue residence to speak to Defendant regarding an unrelated investigation. Detective Ewing again visited in "late morning," and Defendant's father answered the

---

[1] At the time of trial, Brandon Ferrell worked for the Kingsport Public Defender's Officer as an investigator. We will use his title on the offense date.

door.  Detective Ewing waited in the living room while Defendant's father "went down a hallway, was gone for just a short time, came back out and then a couple minutes later, [Defendant] [came] back down the hallway wearing a pair of boxer shorts and a t-shirt[.]"

On cross-examination, Detective Ewing stated that to his knowledge both Defendant and Defendant's father lived at the Swannaoa Avenue residence.  Detective Ewing determined that Defendant lived at the residence based on Defendant's presence and appearance when Detective Ewing saw him there.  Detective Ewing stated that he "[p]robably [did] not" inform Defendant before making either visit to the Swannaoa Avenue residence.

On April 26, 2018, KPD Officer Quinn Shelton went to the Swannaoa Avenue residence to serve a warrant on Defendant.  When he arrived, Defendant was in the "rear carport area."  Officer Shelton identified Defendant in court as the man he served at the Swannaoa Avenue residence.  On cross-examination, Officer Shelton affirmed that he only saw Defendant outside of the residence.

Deborah Carey-Dunn[2] previously worked as a criminal investigator with the Johnson City Police Department, and in that capacity, she oversaw the Johnson City sex offender registry for approximately sixteen years.  She explained that an offender was required to sign a Tennessee Bureau of Investigation Sex Offender Instruction Form ("instruction form") annually and that an offender's signature on the instruction form affirmed that the offender had read and understood the instructions.  Before an offender signed the instruction form, Investigator Carey-Dunn would make the offender aware of any changes in the registry requirements.

Investigator Carey-Dunn supervised Defendant for "[m]any years," beginning around 2006 or 2007.  Defendant was required to report quarterly in March, June, September, and December.  Investigator Carey-Dunn identified an instruction form dated March 22, 2017, an instruction form and Tennessee Bureau of Investigation Sex Offender Registry Tracking Form ("tracking form") dated March 21, 2018, and a tracking form dated May 30, 2018.  The documents were exhibited to her testimony and showed that they were all signed by Defendant.  Both tracking forms listed an address in Johnson City as Defendant's primary residence, and the May 30, 2018 tracking form listed three email addresses, one of which was "russybourbon@gmail.com."  Neither tracking form listed any social media accounts, vehicles, or a secondary address.

---

[2] At the time of trial, Deborah Carey-Dunn was a lieutenant with the Washington County Sheriff's Office.  We will use her title and name on the offense date.

Investigator Carey-Dunn did not recall whether Defendant had read the entirety of the instruction forms while in her office. She affirmed that the May 30, 2018 instruction form was completed by an officer with the Washington County Sheriff's Office, and she agreed that when an offender changes his address, the offender must report to the law enforcement agency in that area. On cross-examination, Investigator Carey-Dunn recalled that Defendant was compliant during her supervision.

KPD Detective Craig Dunworth,[3] the primary sex offender registry investigator for the KPD, explained that an instruction form is given to an offender annually, regardless of how often the offender was required to report, but an offender was only required to complete a tracking form if there were changes to any of the offender's information, such as an address, telephone number, employment, social media accounts, and email addresses. As a sex offender registry investigator, Detective Dunworth could access the records of offenders who were reporting to another agency and could open investigations into offenders who Detective Dunworth believed should be reporting to him but were not. Detective Dunworth had access to the National Crime Information Center ("NCIC") database, through which he could access an offender's "information [that] is entered by the reporting agency to NCIC for the purposes of tracking. . . . It includes their reported address, any reported vehicles that are associated with them, even so far as their email addresses and phone numbers." Because of his employment, Detective Dunworth was familiar with the "seven (7) patrol zones" within Kingsport where sexual offenders are prohibited from living, working, or visiting because the zones are within 1,000 feet of a restricted area, such as schools, daycares, playgrounds, or a city or state park.

At the request of Detective Ewing, who was investigating the theft of Defendant's car, Detective Dunworth opened an investigation of Defendant's potential violations of SORA. Through his investigation, Detective Dunworth connected Defendant to the Fort Henry Drive residence and the Swannaoa Avenue residence, both of which were in Kingsport, Tennessee. Detective Dunworth explained that an offender subject to SORA was required to register or report in person to the designated law enforcement agency within forty-eight hours of changing a residence, and Defendant's instruction forms included this requirement. Detective Dunworth confirmed that the Fort Henry Drive residence was not listed on Defendant's tracking forms nor had Defendant reported to Detective Dunworth at any time.

Detective Dunworth identified a Google Maps photograph showing the area surrounding Andrew Johnson Elementary School, and the photograph had a "dropped pin" to note the location of the Swannaoa Avenue residence. Detective Dunworth had been to

---

[3] At the time of trial, Craig Dunworth was a patrol sergeant for KPD. We will use his title on the offense date.

both locations. He explained that he had experience in accurately estimating distances because he is a firearms instructor for the police department and "an avid shooter at distance[.]" Based upon his knowledge of measurements and of both locations, Detective Dunworth estimated that the Swannaoa Avenue residence was within 1,000 feet of Andrew Johnson Elementary School. Detective Dunworth affirmed that an offender subject to SORA was prohibited from establishing a residence within 1,000 feet of a public school, and this prohibition was listed in Defendant's instruction forms.

During his investigation, Detective Dunworth discovered a Facebook account with the name "Russy Bourbon." He identified two "selfie" photographs and four "selfie[-]style" videos that he obtained from the Facebook page that depicted Defendant. Detective Dunworth explained that Defendant's instruction forms explained that he was required to report any new vehicles and social media accounts. Detective Dunworth affirmed that Defendant's tracking forms did not report the Facebook account, but the May 30, 2018 tracking form listed three email addresses, including "russybourbon@gmail.com." Detective Dunworth also confirmed that Defendant's tracking forms did not report the vehicle Defendant had reported stolen.

On cross-examination, Detective Dunworth affirmed that he had not actually measured the distance between Andrew Johnson Elementary School and the Swannaoa Avenue residence. Detective Dunworth had no personal knowledge of the conversations between Defendant and the officers regarding the tracking forms. Detective Dunworth did not obtain mail from either the Fort Henry Drive residence or the Swannaoa Avenue residence addressed to Defendant, and he had not personally seen Defendant at either residence. Detective Dunworth was unaware that Defendant had previously reported the Swannaoa Avenue residence as his address on tracking forms in 2005 and 2008. Detective Dunworth affirmed that he "did not verify the account through Facebook directly[.]"

After the State rested its case, Defendant elected not to testify and did not present proof. The trial court denied Defendant's motion for directed verdict.

Based on the above proof, the jury convicted Defendant as charged in the indictment for four counts of violating SORA. After a sentencing hearing, the trial court imposed concurrent sentences of two years, suspended to probation after service of ninety days of incarceration for each count. Defendant filed a timely motion for new trial, which was denied on November 6, 2023. Defendant's timely appeal is now properly before this court.

**Analysis**

Defendant argues that the evidence was insufficient to support his convictions in counts one and two because the State failed to prove that he knowingly established a

- 5 -

primary or secondary residence or any other living accommodation within one thousand feet of a public school and that he knowingly failed to timely register or report in person that he established or changed a primary or secondary residence or physical presence at either location. Defendant does not challenge his convictions for counts three and four. The State argues that there was sufficient evidence to support a finding that Defendant had established at least a physical presence or living accommodation at both residences. We agree with the State.

When evaluating the sufficiency of the evidence on appeal, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). The standard of review is the same whether a conviction is based on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (quoting *Hanson*, 279 S.W.3d at 275). Further, the State is afforded "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

The jury evaluates the credibility of the witnesses, determines the weight to be given to witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379. A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.3d 474, 476 (Tenn. 1973)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

To support a conviction for a violation of SORA, the State must prove that the defendant was an offender who was subject to SORA and that the defendant violated one of the provisions of SORA. *See* T.C.A. § 40-39-208(a); 7 Tenn. Prac. Pattern Jury Instr. T.P.I. – Crim. 10.16. Because Defendant stipulated at trial that he had a conviction which subjected him to SORA requirements, the State's only burden in this case was to prove that Defendant violated the specific SORA provisions as charged in counts one and two of the

indictment. *See State v. Atwell*, No. E2021-00067-CCA-R3-CD, 2022 WL 601126, at *5 (Tenn. Crim. App. Mar. 1, 2022), *perm. app. denied* (Tenn. Aug. 3, 2022), *cert. denied*, 143 S. Ct. 492 (2022).

As relevant here regarding count one, the State was required to prove that Defendant "knowingly establish[ed] a primary or secondary residence or any other living accommodation . . . within one thousand feet" of any public school. T.C.A. § 40-39-211(a)(1). Regarding court two, the State was required to prove that Defendant failed to register or report in person within forty-eight hours of "establishing or changing a primary or secondary residence, [or] establishing a physical presence at a particular location[.]" *Id.* -203(a)(1). Primary residence is defined as "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for five (5) consecutive days[.]" *Id.* -202(12). Secondary residence is "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for a period of fourteen (14) or more days . . . during any calendar year" or "for a period of four (4) or more . . . days in any month and that is not the person's primary residence[.]" *Id.* -202(18). Defendant contends that although "primary residence" and "secondary residence" are defined by law, the terms "any other living accommodations" in count one and "physical presence" in count two are not defined. Therefore, "these terms must mean something more than just being physically present at a certain location for a moment in time."

The court's role in interpreting a statute is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016). Legislative intent is found in the plain and ordinary meaning of the statute. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) ("We give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose'") (citation omitted); *State v. L.W.*, 350 S.W.3d 911, 916 (Tenn. 2011). This court presumes that the legislature included each word in a statute deliberately and that each word has a specific meaning. *State v. Cavin*, 671 S.W.3d 520, 525-26 (Tenn. 2023). Thus, we presume the legislature deliberately included the words "living accommodation" and "physical presence" in the respective statutes. And while those terms are not defined by law, they have a clear, natural, and ordinary meaning in the context of the statute's general purpose.

However, when viewed in the light most favorable to the State, the evidence in this case is sufficient to support Defendant's convictions that he established a primary or secondary address in Kingsport. On his March and May 2018 tracking forms, Defendant reported only a Johnson City address as his residence. By his signature on the instruction forms, Defendant acknowledged that he knew he had to report a change in residence and that he was prohibited from living within 1,000 feet of a school. Defendant twice

- 7 -

acknowledged that he lived in Kingsport. On February 26, 2018, while reporting his vehicle as stolen, Defendant told Officer Magdzuik that he lived "[r]ight here" while standing in front of and gesturing toward the Fort Henry Drive residence. When Defendant purchased the unreported vehicle, he listed the Swannaoa Avenue residence as his address on the Title Pledge Agreement and Disclosure/Receipt for the vehicle. This evidence of Defendant's own admissions is sufficient for a jury to have reasonably concluded that Defendant established a primary or secondary residence at either location in Kingsport. There was also additional evidence supporting Defendant's admissions. Officers located Defendant at the Swannaoa Avenue residence three times from March 1, 2018, through April 26, 2018, each time without prior notification to Defendant that they would meet there, and notably, on one occasion when Detective Ewing visited the Swannaoa Avenue residence in the morning, Defendant came out wearing only "a pair of boxer shorts and a t-shirt."

Detective Dunworth estimated the distance between the Swannaoa Avenue residence and Andrew Johnson Elementary School as less than 1,000 feet or "roughly a football field." Based on this evidence, the jury could have reasonably concluded that Defendant had established a primary or secondary residence at either residence and that the Swannaoa Avenue residence was within 1,000 feet of a public school. The evidence was sufficient to support Defendant's convictions. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE